## FINLEY *v.* LYNN.

———

A bond, executed in pursuance of articles of agreement, may, in equity, be restrained by those articles.

A complainant in equity may have relief even against the admissions in his bill.

ERROR to the circuit court for the district of Columbia, in a suit in chancery, brought by Finley against Lynn.

The bill stated that on the 27th of February, 1804, the plaintiff and defendant entered into articles of copartnership, by which the stock to be furnished by the plaintiff was to consist of one half of the ship *United States* and 5,000 dollars; and by the defendant, his gold and silver manufactory, two lots in the city of Washington, all his stock of merchandise, and the rents of two houses. That a part of the merchandise agreed to be furnished consisted of plate, jewelry, &c. purchased by the defendant of Messrs. *Lemuel Wells & Co.* to the amount, as was then supposed, of 2,300 dollars; and, in consideration of its being brought into the joint stock, the plaintiff agreed to pay one half of the debt due to *Wells & Co.* therefor.

That the business of the concern was conducted in two separate stores, viz. a hardware store r incipally

under the management of the plaintiff; and a jewelry store under the management of the defendant, containing the stock of jewelry, &c. brought into the joint concern by the defendant, and that which was purchased of *Wells & Co.* The business of the copartnership was carried on until the 1st of March, 1805, when a dissolution took place. During that period goods were bought and carried into the jewelry store, and at the time of the dissolution "the *jewelry store was indebted to said concern*" in the sum of 2,825 dollars and 27 cents, besides which the *concern* had paid *Wells & Co.* in part of their debt, the sum of 265 dollars and 56 cents. That the dissolution was upon the following terms, viz. that the defendant should *withdraw all the property put into the joint stock by him;* and should have the *goods in the jewelry store,* and all the *debts due to that store,* as a compensation and in lieu of the *profits* arising upon the *whole* business. And the plaintiff was to take on his account the goods in the hardware store, and the goods which were ordered for the spring; and was to *indemnify* the defendant from all claims or demands upon the concern, or which might arise from goods then ordered, and not at that time received; which articles of dissolution were under seal. That when the plaintiff signed the articles of dissolution he did not intend to commit himself to the payment of the debt due to Wells & Co. For although, by the articles of copartnership, he had agreed to pay half the debt, yet as the goods were given up to the defendant upon the dissolution, he considered himself absolved from that obligation. And the plaintiff contends that the defendant ought to have been satisfied when the plaintiff "returned to him the *whole jewelry* store, with the accession of nearly 3,000 dollars worth of merchandise, and gave up to him the *profits of the said store,* which he believes to be equal to 2,500 dollars more."

That upon the dissolution the plaintiff agreed to give the defendant security for his performance of the terms of the dissolution, and the defendant had a bond prepared, which was signed by the plaintiff and his sureties; that the plaintiff did not see the bond until he was called

FINLEY
v.
LYNN.

on to sign it, and that he is satisfied he never read it, taking it for granted that it was a bond to compel him to perform what he was bound to perform by the terms of the dissolution; and that his sureties executed it under the same circumstances and impression. That the defendant did not claim payment of the debt due to Wells & Co. for a year after the bond was executed, although Wells & Co. before the dissolution had brought suit against the defendant therefor; that the defendant had rendered the plaintiff some accounts in which that debt was not mentioned. That the defendant afterwards brought suit upon the plaintiff's bond, and gave notice that he should claim the whole amount of the debt due to Wells & Co. That the plaintiff's counsel was of opinion that the bond was so worded as to bind the plaintiff to the payment of that debt, whereupon the plaintiff confessed a judgment at law, saving his right to relief in equity. That the bond was executed under a mistaken impression of its contents; and that the defendant will take out execution upon the judgment at law. The bill then prays an injunction to stay execution, until the matter in dispute can be heard and decided in equity, and the accounts between the plaintiff and defendant examined and settled, and for general relief.

The injunction was granted by one of the judges out of court.

In the articles of copartnership, after stating what stock the plaintiff should bring into the joint concern, the debt to Wells & Co. is mentioned in the following manner, viz. " And on the part of Adam Lynn, his gold and silver manufactory, two lots in the city of Washington, all his stock of merchandise, (the said O. P. Finley and Adam Lynn, *jointly and severally*, by these presents, *binding themselves*, their heirs, executors, administrators and assigns, *to pay to Lemuel Wells & Co.* of New-York, *two thousand three hundred dollars, money due to them on account of said merchandise*,) the rents of one house," &c.

The account against the jewelry store was an ac-

count opened in the books of the company, charging that store with goods purchased and put into it for sale on the joint account; and giving it credit by cash and by goods sold to sundry persons; showing a balance of goods remaining in that store of 2,825 dollars and 27 1-2 cents, over and above the goods which were in it at the commencement of the copartnership.

The articles of dissolution were truly recited in the bill.

The condition of the bond of indemnity was as follows: ".Whereas the said O. P. Finley and Adam Lynn, late joint merchants and copartners under the firm of Finley & Lynn, have by mutual consent dissolved the said copartnership on the first day of the present month, on which dissolution it was, among other things, agreed between the said Oliver P. Finley and the said Adam Lynn, that the said Oliver P. Finley should satisfy and pay all debts and contracts due from or entered into by the said copartnership, or either of the said copartners, for or on account of, or for the benefit of the said copartnership, including certain debts due from the said Adam Lynn, for goods by him ordered, which have been received by the said copartnership; and also all debts which may arise from merchandise hereafter shipped to the said concern in consequence of any orders heretofore made; now the condition of the above obligation is such, that if the said Oliver P. Finley shall well and truly satisfy and discharge all the debts and contracts herein before described, so as to indemnify and save harmless the said Adam Lynn from the payment of the same, and from any suit or prosecution in law or equity, for or on account of the said debts and contracts, then this obligation to be void."

There was also raised in the books of the concern an account against " *merchandise*," the balance to the debit of which was 4,028 dollars and 89 cents. And a statement of hardware imported on the joint account before March, 1805, amounting to 7,653 dollars and 8

cents. And of debts of the concern paid by Finley amounting to about 6,000 dollars.

The defendant's answer admits the original articles of copartnership and of dissolution, and the bond as referred to in the bill. It denies that the plaintiff advanced the 5,000 dollars in cash; and avers that the profits of the ship United States never came to the use of the concern, but were retained by Rickets & Newton, to whom the plaintiff had transferred his half of that ship. It avers that by the articles of copartnership, each party was to bring into the joint stock 11,000 dollars. That the defendant brought in 2,429 dollars more than his proportion, which was the reason of making the debt to Wells & Co. a partnership debt; after which there was still an excess of capital, amounting to 129 dollars furnished by the defendant, for which he had credit upon the first opening of the partnership books.

The entry of stock on the 1st of March, 1804, was as follows:

|  | l. | s. | d. |  | l. | s. | d. |
|---|---|---|---|---|---|---|---|
| Cash in England, | 1,500 | 0 | 0 | | | | |
| One half ship U. States, | 1,800 | 0 | 0 | | | | |
| Real estate, | 1,290 | 0 | 0 | | | | |
| Manufactory, | 1,200 | 0 | 0 | | | | |
| Merchandise, | 1,538 | 14 | 0 | | 7,328 | 14 | 0 |
| Due from stock to L. Wells & Co. of N. Y. | | | | 690 | 0 | 0 | |
| To Adam Lynn, | | | | 38 | 14 | 0 | |

It avers that the debt to Wells & Co. was, from this period, always considered by both parties as a copartnership debt, and that it was by the advice of the plaintiff that the defendant suffered himself to be sued for that debt.

It admits that some goods were brought from the hardware store to the jewelry store, but avers goods to a large amount were also taken from the latter to

the former store, of which no account was kept. It denies that the account exhibited by the plaintiff against the jewelry store is correct; and avers that if a true account had been kept, the balance would have been in favour of that store. It avers that it was the intention of the defendant, and he believes of the plaintiff also, in the articles of dissolution, to include the debt due to Wells & Co. under the description of " all claims and demands on the concern." That it was adopted as a social debt by the articles of copartnership, and was placed to the credit of Wells & Co. on the books of the concern, and a partial payment made out of the joint funds. That if this credit had not been so given, the defendant would have been a creditor of the concern to the amount of 2,429 dollars instead of 129. That the plaintiff had paid many of the debts due from the jewelry store which were situated exactly like that of Wells & Co.

The answer expressly avers that the plaintiff did read, examine, and, as the defendant believes, perfectly understand the bond of indemnity before he executed it. That it was left with him some hours before he signed it. And it avers also, positively, that the plaintiff's sureties read it and made remarks to the defendant in the presence of the plaintiff upon the manner in which it was drawn.

It states that the defendant offered the plaintiff two propositions as the basis of the dissolution. One was, that a dividend should be made of the debts, the profits, and the stock; and if any difference should arise, on settlement, it should be submitted to three merchants. The other was, that the defendant should have the merchandise in the jewelry store, and the debts due to that store, as a compensation in lieu of the profits of the whole business; that the plaintiff should hold the merchandise in the hardware store, and the debts due to it, and the profits of the trade, and should pay all debts and contracts as stated in the bond; the latter of which propositions was accepted by the plaintiff.

The answer denies that the defendant received back the jewelry store with the accession of 3,000 dollars worth of merchandise, or that the profits were equal to 2,500 dollars. It avers that the defendant believes they did not exceed 1,250 dollars, and were less than those of the hardware store. That the profits of the ship United States were at least 4,000 dollars. These the defendant relinquished to obtain indemnity against the debts of the concern. That the plaintiff refused to take an inventory at the time of dissolution, so that an accurate account cannot be taken. That the reason why he did not sooner claim from the plaintiff the amount due to Wells & Co. was, that he was under an erroneous opinion that he could have no recourse to the plaintiff until he should first have paid and discharged that debt.

The answer denies any agreement between the plaintiff and defendant to acquit each other of their private debts.

The only testimony in the cause related to the profits of the ship United States; and the accounts exhibited being true copies from the books.

The court below, conceiving that the whole equity of the bill was completely denied by the answer, and not supported by the evidence in the cause, dissolved the injunction, and, upon final hearing, dismissed the bill; whereupon the plaintiff brought his writ of error.

*Swann* and *Youngs*, for the plaintiff in error, contended,

1. That Finley was not bound to pay the debt du to Wells & Co.; and,

2. That Finley was entitled to the amount standing on the books of the concern to the debit of the jewelry store, it being (as they contended) a debt due to the *hardware store*, and that, by the true construction of the articles of dissolution, Finley was entitled to the debts due to that store.

FINLEY
v.
LYNN.

1. In support of the first point it was said that by the articles of dissolution Finley was bound to indemnify Lynn from "*claims* and *demands* upon the *concern*" only. That the claim of Wells & Co. was against Lynn only for goods originally sold to him upon his sole credit, and that although the goods afterwards came to the use of the concern, and although Finley and Lynn might agree between themselves to consider it as a joint debt, yet that would give Wells & Co. no claim upon the *concern*. That the bond was given merely to carry into effect the articles of dissolution, and will not in equity be extended beyond the expressions of those articles. The bond does not alter the equitable obligations of the parties. 1 *Fonb.* 106. 188. 192.   2 *Atk.* 203.   2 *P. Wms.* 349.   1 *P. Wms.* 123.

2. Although the articles of dissolution do not expressly give Finley the debts due to the hardware store, yet it is to be implied from the principle of reciprocity which seems intended between the parties, and from the circumstance that he was bound to pay all the debts of the concern.   1 *Fonb.* 427.  Although the account makes the jewelry store debtor to Finley and Lynn, yet it means Finley and Lynn's hardware store, because that store was carried on in the name of *Finley & Lynn*, the jewelry store in the name of *Lynn only*.

Although the plaintiff has not in his bill claimed this balance, yet that is no objection to his recovery. He has prayed for *general* relief, and the court will give him every thing which in equity he ought to have.   3 *Atk.* 523.

Although the defendant denies that balance to be due, because he says goods, of which no account was taken, had been carried from the jewelry to the hardware store, yet he admits that the goods charged in the account were furnished and sent to the jewelry store, and his answer is no evidence that goods were carried from the jewelry to the hardware store. It is not an averment responsive to the bill, and must be proved by other evidence than the defendant's answer.

One witness will authorize a decree against an answer. 1 *Atk.* 19. And here was a witness who testified that both the parties admitted the entries in that account to be correct.

*E. J. Lee* and *Jones,* contra.

The whole equity of the bill consists in the allegation that the bond does not agree with the articles of dissolution, and was obtained by surprise. It contains no other ground of complaint. The answer completely denies this equity, and there is no proof to support it.

The bond is warranted by the articles of dissolution and the articles of copartnership. The ground of surprise and mistake is denied absolutely by the answer. It is a rule in equity that the ground of mistake or surprise must be clearly proved before a court of equity will interfere. 1 *Vezey,* 317. In this case there is a total failure of proof altogether. Nothing can be clearer than the liability of the plaintiff to pay the debt of Wells & Co. The articles of copartnership are express and pointed to that effect. The articles of dissolution, taken in connection with the articles of copartnership, are equally explicit, and the bond is unequivocal.

With regard to the account raised against the jewelry store, it is no more than a memorandum of the amount of goods placed there for sale. The account is with the *concern.* The plaintiff in his bill expressly states it to be so. It is no more than if the company had chosen to keep a separate account of the profits arising from any particular article of merchandise. It is very common for merchants to open an account against flour, or rum, or tobacco, or wine, or any other article in which they have large dealings, yet no one ever thought that such an account created a *debt.* If this account against the jewelry store created a debt, it was Finley & Lynn's debt to Finley & Lynn. The jewelry store was Finley & Lynn's store. An account against the store was, therefore, an account

against Finley & Lynn.  It was merely the right hand made debtor to the left.

Besides, it was clearly the intention of the parties that something should be given to Lynn in lieu of his share of the profits of the trade.  If you give him the goods in the jewelry store, and still make him debtor for the goods, you give him nothing.  He might as well have bought the goods elsewhere.  The plaintiff in his bill *makes a merit* of having given up to the defendant the *whole jewelry store*, with the accession of *nearly 3,000 dollars worth of merchandise*, and the *whole profits* of that store to the amount of 2,500 dollars.  This could not possibly have been the case if the defendant was to be made debtor for those goods. Although a person is not bound in equity by the admission of a principle of law, yet he is by the admission of a fact; and here is a clear admission of a fact as to the understanding and the intention of the parties at the time of the dissolution.

### March 7.

MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.*

The plaintiff and defendant had been copartners in trade, and had carried on their business in two stores ; the one a jewelry store in the name of Lynn, to be conducted exclusively by him; the other a hardware store in the name of Finley & Lynn, to be under the joint management of the partners.

Previous to the commencement of their partnership, Lynn had contracted a debt to Lemuel Wells & Co. of New-York, for goods ordered for a jewelry store carried on by himself, which goods it was mutually agreed to transfer to the new concern, and the debt to Lemuel Wells & Co. should become a debt chargeable on the social fund.

In February, 1805, it was agreed to dissolve the copartnership; and articles were entered into to take

* Judge Johnson was absent.

effect on the first day of March. The terms were, "that Adam Lynn shall withdraw all the property put into the joint stock by him, and that he shall have the goods in the jewelry store, and all the debts due to that store, as a compensation in lieu of the profits arising from the whole business; and the said Finley agrees to take, on his own account, the goods in the hardware store, and the goods which are ordered in the spring, and to indemnify the said Adam Lynn from all claims or demands upon the said concern, or which may arise for goods now ordered, and not yet arrived."

On the second of March, a bond of indemnity was executed, the condition of which, after stating the dissolution, proceeds thus: " On which dissolution it was, among other things, agreed that the said Oliver P. Finley should satisfy and pay all debts and contracts due from, or entered into by, the said copartnership, or either of the said copartners, for or on account of or for the benefit of the said copartnership, including certain debts due from the said Adam Lynn for goods by him ordered, which have been received by the said copartnership, and also all debts which may arise from merchandise hereafter shipped to the said concern, in consequence of any orders heretofore made.

" Now the condition of the above obligation is such, that if the said Oliver P. Finley shall well and truly satisfy and discharge all the debts and contracts herein before described, so as to indemnify and save harmless the said Adam Lynn from the payment of the same, and from any suit or prosecution in law or equity for or on account of the said debts and contracts, then this obligation to be void."

Some time previous to the dissolution, an action had been brought by Lemuel Wells & Co. against Adam Lynn for the recovery of this debt which was then depending.

In December, 1806, Adam Lynn, for the first time, claimed, under the bond of indemnity, the amount of

the debt to Lemuel Wells & Co. and, payment being refused, instituted a suit on the bond. Supposing that no defence could be made at law, judgment was confessed, with a reservation of all equitable objections to the payment. A bill was then filed suggesting that the bond was executed by mistake, and in the confidence that it was in exact conformity with the articles, and praying that it might be restrained by the articles. Several extrinsic circumstances are also detailed and relied upon as demonstrating that Lynn himself did not suppose, until so informed by counsel, that the bond comprehended this debt.

An injunction was granted which, on the coming in of the answer, was dissolved, and, on a final hearing, the bill was dismissed.

The answer denies all the allegations of the bill which go to the mistake under which the bond was executed; insists that it conforms to the true meaning of the articles and intent of the parties; and endeavours to explain those extrinsic circumstances on which the plaintiff relied.

That a bond, executed in pursuance of articles, may be restrained by those articles, if the departure from them be clearly shown, is not to be controverted. But in this case, the majority of the court is of opinion that no such departure is manifested with sufficient clearness to justify the interposition of a court of equity.

By the articles of copartnership, the de t to Lemuel Wells & Co. was assumed by the firm of Finley & Lynn, and was payable out of the partnership fund. It is true that, at law, it did not constitute a demand against the partnership, but the court is much inclined to the opinion, that, had Lynn become insolvent, a suit in equity might have been sustained, on this claim, against Finley & Lynn.

If it might in equity, though not in law, be a " claim

or demand upon the concern," there does not appear to be such a repugnancy between the bond and the articles as to induce the court to say that the bond, which, so far as is shown in this cause, was executed without imposition, and with a knowledge of its contents, binds the obligors further than they intended to be bound. The extrinsic circumstances relied on are certainly entitled to much consideration ; but they are not thought sufficiently decisive and unequivocal in their character to justify a court of equity in restraining legal rights acquired under a solemn contract.

Though this is the principal object of the bill, it may be understood to contemplate something further. It prays for a settlement of all accounts, and for general relief.

So far as the accounts between the parties are closed by the articles of dissolution, no reason can be assigned for opening them. But if rights, growing out of those articles, require a settlement, the plaintiff is entitled to an account.

By a majority of the court it is conceived that if any profits had arisen on the jewelry store, independent of the goods on hand and of the debts due to the store, the plaintiff is entitled to them. It is not probable that there are such profits ; but it is very possible that there may be. Large sums of money may have been received, and might either be on hand when the dissolution took place, or have been diverted to various uses. If such be the fact, the majority of the court is of opinion that any fair construction of the articles gives those profits to the plaintiff. The contract is, that Adam Lynn shall have "the goods in the jewelry store, and all the debts due to that store, as a compensation in lieu of the profits arising from the *whole business*." Now the profits of the jewelry store, if any, not existing in debts or goods, were certainly a part of the " profits of the whole business," and are, consequently, yielded to the plaintiff.

That this was the deliberate intention of the defend-

ant, is avowed in his answer. A proposition for a
dissolution was, he says, made by him in writing and
accepted by the plaintiff. That proposition is, " that
the defendant should have the merchandise in the
jewelry store, and the debts due to that store, as a
compensation in lieu of the profits of the whole busi-
ness; that the complainant should hold the merchan-
dise in the hardware store, and the debts due to it,
*and the profits of the trade.*"

Now the profits of the jewelry store are certainly a
part of the " profits of the trade."

The plaintiff also claims a debt said to be due from
the jewelry store to the hardware store.

As all the debts due to the hardware store are
obviously assigned to Finley, this debt becomes his
property, unless his claim to it is relinquished by the
undertaking to pay all debts due from the concern.

The words of this undertaking are to be looked
for in the condition of his bond. He is to " satisfy
and pay all debts and contracts due from, or entered
into by, the said copartnership, or either of the said
copartners, for or on account of or for the benefit of the
said copartnership."

The terms of this stipulation appear to the court
to be applicable to claims upon the copartnership,
and not to claims of a part of the company on the other
part. He is to satisfy and pay all debts and contracts
due from, or entered into by, the said copartnership,
not to release the claim of one store upon the other.
This is a claim which did not exist upon the copart-
nership, and which grows out of the articles of dissolu-
tion. Those articles assign to the plaintiff all the pro-
fits of the hardware store, as well as the debts due to
it. They separate what was before united. They
draw the distinction between the hardware and the
jewelry store, and make the debt due to the hardware
store a part of the profits of that store.

The residue of the condition does not affect the question, and need not be recited.

It is, then, the opinion of a majority of the court that, if there was really a debt due from the jewelry store to the hardware store, Finley is entitled to that debt.

This is a proper subject for an account.

The plaintiff has probably not applied for this account in the court below, and it does not appear to be a principal object of his bill. This court, therefore, doubted whether it would be most proper to affirm the decree dismissing the bill with the addition that it should be without prejudice to any future claim for profits, and for the debt due from one store to the other, or to open the decree and direct the account. The latter was deemed the more equitable course. The decree, therefore, is to be reversed, and the cause remanded, with directions to take an account between the two stores, and an account of the profits of the jewelry store, if the same shall be required by the plaintiff.

TODD, J. concurred in the opinion of the court that the debt of *Wells & Co.* was a debt to be paid by Finley, but he differed upon the other part of the case, being of opinion, that the complainant was not entitled to a relief which by his bill he had made a merit of waiving.

*Decree reversed*, and the cause remanded, with directions to reinstate the injunction, and take an account, &c.