Charles M. Davis and another v. Curtis T. Dodge and another.

*Partners: Individual account: Partnership liability.* Where two firms have dealt with each other, and each firm has dealt with the members of the other, under an understanding and agreement of the firms and all the members, that the individual account of any partner with the other firm should be considered and treated as matter of firm account against his firm, and dealings and settlements have from time to time been made on this basis, the balance found on such a settlement, made in good faith on the strength and in pursuance of such antecedent agreement and practice, is held to be a legitimate demand as between the parties, on behalf of the creditor firm against the other, for which an action will lie.

*Contracts: Partners.* Where no rule of law or policy stands in the way, and the parties labor under no disability, their right to bind themselves by such an agreement is held to be complete.

*Statute of frauds: Promise to answer debt of another: Original transactions.* Such an understanding is not within the provision of the statute of frauds as to promises by one party to answer for the debt of another; purchases and sales made in strict pursuance and on the faith of such an agreement are entitled to be considered as original transactions on the part of the members of the firm charged.

*Heard July 16.    Decided October 13.*

Error to Lapeer Circuit.

*Gaskill & Geer,* for plaintiffs in error.

*William W. Stickney,* for defendants in error.

GRAVES, CH. J.

From 1855 to 1873 the defendants in error composed a firm, under the style of Dodge & Van Dyke. Their business was that of dry-goods merchants, which they carried on at the city of Lapeer.

From 1864 until the 16th of September, 1872, the plaintiffs in error composed a firm, under the style of Davis & Peter. They dealt in hardware, and their place of business was also at Lapeer. At the last named date Peter sold out to one Slayton, and left the firm. Prior to his retiring, and for some years, the two firms had dealt together on credit; each firm keeping an open account

with the other, and which, from time to time, was settled, by setting the account of one firm against that of the other, and carrying whatever balance was found in favor of one or the other, as the case might be, to a new account.

During the same time, the individual partners respectively made accounts with the neighboring firm. Those made by or on the part of the individual members of the firm of Dodge & Van Dyke, at the establishment of Davis & Peter, were regularly charged by the latter in the firm account kept against Dodge & Van Dyke, but with references to indicate the party purchasing. The accounts made on the part of the individual members of the firm of Davis & Peter, at the establishment of Dodge & Van Dyke, were, however, kept distinct in the books of the latter firm.

It would seem to have been the usual course, if not the universal one, when adjustments were made, from time to time, between the firms, to carry into the account against the firm the private account run up by either member of that firm, and to treat the whole, for the purpose of settlement between the firms, as firm matters, and to transfer any balance to a new account.

Late in 1872, and after Peter had sold out to Slayton, the firm account of Davis & Peter against the firm of Dodge & Van Dyke was four hundred and sixteen dollars and twenty-six cents, and the firm account of Dodge & Van Dyke against the firm of Davis & Peter, exclusive of individual matters, was one hundred and sixty-four dollars and eighteen cents. The balance, therefore, on account, if no items made on the part of individual members were included, was in favor of Davis & Peter, and amounted to two hundred and fifty-two dollars and eight cents. But there was an account standing on the books of Dodge & Van Dyke of about two hundred dollars, which had been made on the individual behalf of Peter; and this he paid. There was also an account standing on their books made in the individual behalf of Davis. This amounted to four

hundred and eighteen dollars and twenty-seven cents; and it slightly exceeded the entire firm account of Davis & Peter against Dodge & Van Dyke, without aid from the strict firm account of Dodge & Van Dyke against Davis & Peter, of one hundred and sixty-four dollars and eighteen cents.

Davis and Van Dyke met and assumed to adjust and settle the accounts on each side. They allowed the account of Dodge & Van Dyke against Davis, of four hundred and eighteen dollars and twenty-seven cents, and applied it as though it were a firm matter. The result was, that, instead of the production of a considerable balance in favor of Davis & Peter, as otherwise would have been the case, a pretty large balance was established against that firm.

For the balance thus obtained against Davis & Peter, the defendants in error instituted this suit. They were allowed to recover, and Peter alleges error.

It is unnecessary to examine the objections separately. The essential points may be disposed of otherwise. The case may be best considered by looking at it as it was developed in the court below, and seeing whether in view of the alleged errors any principle of law was violated. In pursuing this course no questions not deemed to be raised by the record will be noticed. The theory on which the plaintiffs below proceeded was that the two firms dealt with each other, and that each firm dealt with the members of the other, under an understanding and agreement of the firms and all the members, that the particular account run up by any member for his private benefit, with the neighboring firm, should be considered and treated as matter of firm account against his firm; that dealings and settlements on this basis had been made, and that the account in question against Davis was made by him and allowed by Dodge & Van Dyke to be run up, and was at length adjusted and settled on the strength of, and under and in accordance with, such antecedent agreement and practice.

There was evidence to favor this theory, and the charge

recognized the fact and in effect allowed the jury, in case they should find according thereto, to give a verdict in favor of the plaintiffs below.

I am not satisfied that this view was wrong. The question comes up between the parties to the supposed arrangement, and is confined to them. Creditors of neither firm or of any individual partner make complaint, and they would have no motive in doing so, no inducement to overrule the system of business adopted, if not prejudiced by it. If fully convinced that the assets of the firm and the property of the respective members must afford ample means for the satisfaction of all obligations of whatever kind, they would not feel called on to attempt to hinder the firm from carrying out an agreement to allow a member to make an individual account on the credit of the firm. The respective partners appear to have had lawful capacity to contract, and the subject matter of the supposed agreement was not in itself illegal. It is not asserted, and there is no ground for asserting, that any fraud was committed, or any mistake made, as between the partners, in getting up the arrangement. They chose to exercise their power of contracting, in order to regulate the principles on which they would deal, and bind their rights as between themselves; and it was competent, I think, as a matter between the firms and all their respective members, to make just such an arrangement as the plaintiffs in error claim to have been made. Where assented to by all, it might be considered as one of convenience, and as highly beneficial to the interests of each firm; and it might not unreasonably be regarded as establishing against the members not accommodated, or least accommodated, that in truth it was necessary for the purposes of the concerns.—See *Lewis v. Reilly,* 1 *Q. B.,* 349 ; *Allen v. Center Valley Co.,* 21 *Conn.,* 130 ; *Howe v. Lawrence,* 9 *Cush.,* 553 ; *Sewall v. Rodewald,* 1 *Hall Sup. Ct.,* 348 ; *Menagh v. Whitwell,* 52 *N. Y.,* 146–160–169 ; *Robb v. Stevens, Clarke's Ch. R.,* 191 ; *Kimball v. Thompson,* 13 *Met.,* 283 ; *Finley v. Lynn,* 6 *Cranch,* 238 ; *Commercial Bank of Buffalo v. Warren,* 15 *N. Y.,* 577 ; *Sweetser v.*

*French, 2. Cush., 309; Barnard v. Plank R. Co., 6 Mich., 274; Story on Part.,* § *133 and note; 3 Kent's Com., 41.* Where no rule of law or policy stands in the way, and the parties labor under no disability, the right to bind themselves by agreement would seem to be complete.

Of course it is not intended to intimate that any *non-assenting* partner would be bound by any such arrangement as that claimed to have been made, though entered into formally by the others of his firm and in the firm name. Here the evidence tended to show that *all the partners assented.*

It was suggested on the argument that such a bargain, when not in writing, would be invalidated by the provision of the statute of frauds, which requires that promises by one party to answer for the debt of another must be in writing; and at first view this point appeared to be somewhat plausible. But further reflection has inclined me to think the position is not maintainable.

The proposition assumes that the firm should be regarded as a legal person, separate and apart from the natural persons composing it, and capable of undertaking to answer for the debt of a third person; and it also assumes that one of the firm may at the same time be the third person for whose debt the undertaking is made by the firm. These assumptions, however, if admitted in all their entirety, can not annihilate the fact that the particular third person in the case supposed is actually a component of the firm, and when not protected against firm obligations by interior arrangements among the members, is, as such component, positively included and made liable by the undertaking to comprehend his private account in that of the firm. The undertaking on the basis of the assent of all the members of the firm so undertaking, must, as between the co-partners, be eventually and substantially one of each and every member, and hence an undertaking by the partner himself who is individually concerned. In substance and effect the members of the firm become co-promisors. In the case before us the co-partnership undertaking relied on was not

one to answer for any distinct existing obligation of the one partner, but it was an agreement, having the assent of all, that purchases which should thenceforth be made of either firm by any member of the other, should be on the credit of the firm of the member purchasing, and should form and stand as firm transactions.

Under the plan thus contrived and assented to by all the members of both concerns, it was a matter of entire indifference whether or not the goods bought of one firm by a member of the other should or would be, after their purchase, or at the very time, as between the partner buying and his associates, the individual goods of the buying partner.

That was a fact or circumstance left to be controlled and settled among themselves by the persons composing the firm to which the buying partner might belong; and whatever might be the case in that regard, and whether the title might vest in the buying partner, or in his firm, the selling firm were to be entitled to consider the sale as made to the other firm, and on its credit.    This arrangement was such in its nature, I think, as to make purchases and sales in strict pursuance and on the faith of it, original transactions on the part of the members of the firm charged and not within the statute.    The principle laid down and explained in *Gibbs v. Blanchard, 15 Mich., 292*, appears to me to have a close, if not an exact, application.

Several objections were made to the charge, but on the whole the instructions were pertinent and fair.    They seem to have been given with strict reference to the actual issues and the course of proof.    They were substantially accurate, and there is no reason for supposing that the law was misapprehended by the jury.    If any fault was committed it was not by the court.    The objections grounded on the rejection of evidence are without force.

The judgment should be affirmed, with costs.

The other Justices concurred.