## THRAVES *et al.* v. GREENLEES.

### No. 3097. Opinion Filed September 1, 1914.

### (142 Pac. 1021.)

1.    **INDIANS—Allotment—Right to Alienate.** The adult heir of a deceased minor Cherokee freedman, who died subsequent to September 1, 1902, and before receiving his allotment, and which allotment was subsequent to his death made in his own name, as authorized by section 20 of the Cherokee Agreement of July 1, 1902 (32 St. at L. 716), had authority on January 5, 1906, to alienate the so-called "surplus" allotment, the title to which was cast upon such heir as provided in chapter 49 of the Statutes of Arkansas (Mansf. Dig.), made the law of descent and distribution, in such cases, by said section 20.

2.    **SAME—Alienation of Allotment—Removal of Restrictions.** Such authority, without regard to any previous legislation, is conferred by the act of April 21, 1904 (32 St. at L. 189), removing restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians, not of Indian blood, except minors and except as to homesteads.

3.    **JUDGMENT—Conformity to Pleading.** Where the owner of the fee in inherited lands by warranty deed conveyed her entire right, title, and interest therein, unto the grantee named, his heirs and successors, in fee simple, forever, and afterwards an action is brought by her and a subsequent grantee, in which other plaintiffs are joined, and in which the validity of the original deed is attacked as having been made at a time when the grantor could not alienate, it is error for the court to decree a reformation of the deed attacked, limiting and confining the estate conveyed to the life estate of the grantor, together with the right to prospect and develop oil and gas thereon during said life period; there being no allegation in the petition of either fraud or mistake in the making and execution of the deed.

4.    **REFORMATION OF INSTRUMENTS—Deed to Indian Allotment —Petition—Mistake.** In such case, neither the allegation "that at the time of the death of said Wm. McK. Nelson his allotment was by the public and those versed in the law, understood to be a new acquisition and would descend as such," nor the further allegation "that the interest of Jennie Kilgore in and to the property of said decedent was considered to be that of a life estate and all parties to this action, up to June, 1909, recognized that she had a life estate, and only a life estate in said land," constitutes a sufficient plea of mistake in the making and execution of a deed to the fee.

5.    **JUDGMENT—Conformity to Pleading.** The reformation of a deed so as to convey a lesser estate than that named will not be

granted, unless the elements necessary to justify it are pleaded as grounds for relief.

6. **REFORMATION OF INSTRUMENTS**—Grounds—Pleading and Proof. As the only ground upon which a court of equity is authorized to reform a deed or written contract is that, by reason of fraud or mistake, it is different from what the parties intended to have it, equity has no jurisdiction to reform the writing if there is no fraud or mistake alleged and proved.

(Syllabus by Sharp, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by W. V. Thraves and others against J. R. Greenlees and others. From the judgment, plaintiffs and the defendant named bring error. Reversed and remanded with directions.

*W. D. Humphrey* and *W. M. Justis, Jr.,* for plaintiffs in error Thraves and others.

*W. A. Sipe* and *W. A. Chase,* for plaintiff in error, Greenlees.

Opinion by SHARP, C. On March 12, 1910, plaintiffs, W. V. Thraves, Jennie Kilgore, *nee* Nelson, Eddie Nelson, Lola M. Nelson, a minor, by James Kilgore, her guardian, and Elizabeth Robinson, filed their petition in the district court of Nowata county, in which John R. Greenlees, the Southwestern Land & Investment Company, and J. H. Keith were named as defendants. No summons was ever served on the latter two defendants, and the action as to them was dismissed. Plaintiffs' petition, which is very lengthy, charges that the lands in controversy were allotted to William McK. Nelson, a Cherokee freedman, during his lifetime; that thereafter said allottee died, being at the time of his death between four and five years of age; that decedent left surviving him as his heirs at law his mother, Jennie Kilgore, *nee* Nelson, and two brothers and two sisters; that on the 4th day of January, 1906, one of his said surviving sisters, Elizabeth Robinson, executed to the defendant Keith a deed purporting to convey the title of said Elizabeth in and to her interest in the estate of her deceased brother, Wil-

liam McK., and that on the day following the mother, Jennie, and the other sister, Cora, likewise executed deeds of conveyance to the said Keith to their respective interests in and to the estate of the said William McK. Nelson. It is further charged in the petition that all of said deeds were made before the grantors therein had any legal authority to alienate the lands embraced therein, and hence such deeds were each and all void; that on the 16th day of August, 1907, the said Keith, joined by his wife, executed a quitclaim deed to said lands to the defendant Southwestern Land & Investment Company, and thereafter, and on the 5th day of October, 1907, said Keith executed to said company a second quitclaim deed to said lands, and on the 30th day of June, 1909, the said company conveyed said premises by quitclaim deed to the defendant Greenlees. In the seventeenth paragraph of the petition it is charged that at the time of the death of the allottee, William McK. Nelson, his allotment was by the public and those versed in the law understood to be a "new acquisition," and as such would descend to his heirs as provided in section 2531 of Mansfield's Digest of the Statutes of Arkansas, at the time in force, by congressional enactment, in the Indian Territory. The eighteenth paragraph of the petition charges as follows:

"That the interest of Jennie Kilgore in and to the property of said decedent was considered to be that of a life estate, and all parties to this action, up to June, 1909, recognized the fact that she had a life estate, and only a life estate in said land; and all parties to this action up to said time recognized the fact that the plaintiff Eddie Nelson had a one-fourth interest in the land descended from his brother, William McK. Nelson, and subject to the life estate of said Jennie Kilgore; and up to said time all parties to this litigation recognized the fact that the plaintiff Lola M. Nelson had a similar interest to said Eddie Nelson, and that the plaintiff Elizabeth Robinson, *nee* Nelson, had a similar interest, and that Cora Whitmire, *nee* Nelson, had a similar interest. That at the death of said Cora Whitmire, *nee* Nelson, this portion of her estate, being an ancestral estate, and her father having died prior to her death, descended under the laws in force in the Indian Territory to her mother, Jennie Kilgore."

The petition concluded with the following prayer:

"Premises considered, the plaintiffs herein ask the court to investigate the various claims of all the parties hereto in and to the land in controversy, and to cause an accounting to be made, showing the amount of oil that has been taken from the land, and a judgment to be rendered, defining the interests of each of the parties hereto, and that the court require the defendants to turn into court all proceeds derived from the oil produced from said land, pending this litigation, and, if the defendants are not willing to so do, that the court cause a receiver to be appointed to take charge of the property and to operate the same during this litigation, and the plaintiffs pray for all further and proper relief."

The issues being joined, and the case coming on for trial, while the plaintiff Jennie Kilgore was on the stand, the defendant on cross-examination offered in evidence, without objection, the deed executed by her dated January 5, 1906. This deed recites that it conveys "all of my right, title and interest in and to the estate of William McK. Nelson, deceased," after which follows the description of the land conveyed, which included in all 50 acres. James Kilgore, husband of Jennie, joined in the execution of the deed, which further recited:

"That we are lawfully seised in fee of the aforegranted premises, * * * that we have good right to sell and convey the same to the said John H. Keith aforesaid, and we will and our successors, heirs, executors, and administrators shall warrant and defend the same to the said John H. Keith and his heirs, successors, and assigns forever, against the lawful claims and demands of all persons."

While the same witness was on the stand, she identified an affidavit, exhibited to her by counsel for defendant, made on the date of the execution of the deed, which affidavit named the several heirs at law of William McK. Nelson, deceased, and contained the following recital:

"Affiant further states that she has sold all of her right, title, and interest in and to said estate to John H. Keith of Coffeyville, Kan., which is evidenced by said warranty deeds given to said John H. Keith."

From what has been seen, it will appear from the averments and prayer of the plaintiffs' petition that their action was brought

solely to obtain an adjudication of their respective claims to the land, and an accounting for oil produced from it, on the theory that at the time of the deeds of conveyance of Elizabeth, Jennie, and Cora, they had no authority to convey, and hence that defendant Greenlees, by his purchase from the Southwestern Land & Investment Company, acquired no title. The questions first presented for our consideration, therefore, are: (1) Who were the legal heirs of William McK. Nelson? And (2) had such heir or heirs legal capacity to convey her or their title to Keith in January, 1906?

Notwithstanding the allegation in plaintiffs' petition that the lands in controversy were allotted to William McK. Nelson during his lifetime, the testimony of his mother is that said allotment was selected and set aside in his name after his death, and the court so found in its findings of fact numbered 1 and 4, and this fact appears to be conceded by counsel. The allotment was therefore made under authority of section 20 of the Cherokee Agreement, approved July 1, 1902, and ratified by the Cherokee Nation August 7, 1902 (32 St. at L. 716). Section 20 of the treaty provides that if any person whose name appears upon the roll prepared as therein provided shall have died subsequent to the 1st day of September, 1902, and before receiving his allotment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, with his proportionate share of the tribal property, descend to his heirs according to the laws of descent and distribution, as provided in chapter 49 of Mansfield's Digest of the Statutes of Arkansas; provided that the allotment thus to be made shall be selected by the duly appointed administrator or executor.

On the part of the plaintiffs in error Thraves and others, it is insisted that the deed of Jennie Kilgore, *nee* Nelson, to Keith, was void, being authorized neither by the act of July 1, 1902, nor the act of April 21, 1904 (33 St. at L. 189). The conveyance, it will be remembered, was made January 5, 1906, so that, if it was authorized under either act, the contention cannot be sustained. Whether, independent of the latter act, the heirs of

William McK. Nelson had the legal authority, prior to five years from date of ratification of the treaty, to convey their interest in his estate, is unnecessary for us to determine, as in our opinion this right is clearly deducible from the latter act, which contains the following provision:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

William McK. Nelson was the descendant of a Cherokee freedman, and at the time of his death, prior to allotment, was, as already shown, a minor child between four and five years of age. He was not, therefore, as we understand from the record, within that inhibition of the latter act excluding from its operation those "of Indian blood." It is insisted, however, that the act withholds from its operation the lands of minors, and it is claimed by counsel that they are unable to discover any section of the act authorizing the disposal of allotments by heirs. It would be difficult to conceive of broader language than that used in the act. The person in whose name this allotment was made, and his heirs, were not of Indian blood, as was the case in *Morris v. Greenlees,* 90 Kan. 472, 135 Pac. 569; those who conveyed to Keith were not minors, and the land did not include the homestead portion of the allotment. Indeed, there could properly have been no homestead in and to an allotment made in the name of a deceased citizen. *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566; *Mullen v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834. So it is clear that the act authorized such conveyances unless included in the proviso "except minors." As to this, it is claimed that the exception was intended to preserve restrictions on, not merely alienations by minors, but alienations of their land by any one, so that the adult heirs of a deceased minor could not sell such lands before the expiration of the five-year period of restrictions found in paragraph 14 of the agreement. The only color for this claim is the grammatical ambiguity of the expression "except minors." This we hold, under the facts before us, has reference, not to the age at the

time of the death of the freedman member of the tribe in whose name the allotment was made, but to the age, on January 5, 1906, of the heir or heirs upon whom the title from said deceased member devolved. In other words, the act has reference to the age of the one having a legal authority to convey, and includes deeds of conveyance made by adult heirs.

As already observed, the allotment was made under section 20 of the treaty, which provides that the estate shall descend to the heirs according to the laws of descent and distribution as provided in chapter 49 of Mansfield's Digest of the Statutes of Arkansas. It appears from the record, as already noted, that the father of William McK. Nelson died prior to the death of his son, and that the latter left surviving him, as his next of kin, his mother, Jennie Nelson, two brothers, and two sisters, and that the lands were allotted lands of the Cherokee Nation. Section 2531, Mansf. Dig. of Ark., provides:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided."

If the rule announced in *Shulthis v. McDougal,* 170 Fed. 529, 95 C. C. A. 615; *Pigeon et al. v. Buck et al.,* 38 Okla. 101, 131 Pac. 1083; *Roberts v. Underwood,* 38 Okla. 376, 132 Pac. 673; *Iowa Land & Trust Co. v. Dawson,* 37 Okla. 593, 134 Pac. 39—is to furnish the applicatory law, the fee-simple title in and to the lands allotted in the name of William McK. Nelson immediately passed, upon their selection, to the mother, Jennie. The correctness of the rule is conceded by counsel for plaintiffs in their reply brief, and for that reason will receive no further consideration at this time.

It is insisted, however, that from the pleadings and proof, although Jennie acquired the whole of the estate of her deceased

son, William McK., not only she, but all the others originally interested in the controversy, to wit, herself, her children, and John H. Keith, believed that she had simply a life estate in the property, with a remainder over to her children, the brothers and sisters of her deceased son. Over the objection of the defendant, evidence was offered tending to contradict the terms of the warranty deed, and this without an averment of mutual mistake or fraud in the making of the contract and execution of the deed. In considering the mode of showing a mistake such as will furnish an occasion for the exercise of equitable jurisdiction and the granting of equitable relief, it is said in Pomeroy's Equity Jurisprudence, p. 857:

"When is extrinsic parol evidence admissible to establish a mistake in written instruments, and obtain the appropriate remedy? Whenever any suit or defense arises from a mistake in some transaction, not in the body of a written instrument, and not controlled by the statute of frauds nor by the settled rules concerning written evidence—as, for example, a suit to recover back money paid through mistake—since the entire transaction may be proved by parol evidence. The whole right of action or of defense in such case may depend upon verbal proofs. It is only in cases of mistakes in writings that any difficulty is possible. The following comprise all the modes in which the question can be presented, and furnish a natural order of discussion: (1) In suits expressly brought to reform or to cancel written instruments on account of mistake. (2) Where the mistake is set up as a defense in suits brought to specifically enforce written instruments. (3) When the plaintiff alleges mistake in a written instrument, and seeks to have it enforced as corrected. There will be added: (4) An examination of the question, how far the admission of parol evidence is limited in general by the statute of frauds."

Obviously, plaintiffs' cause of action falls within neither of the classes; hence it was error to admit parol evidence which tended to contradict the terms of the deed, and limit the estate conveyed, for no principle of evidence is better settled at the common law than that, when persons put their contracts in writing, it is, in the absence of fraud or mistake, conclusively presumed that the whole engagement, and the extent and manner of their undertaking, was reduced to writing. I Greenleaf on

Evidence, sec. 275; *Bast v. First National Bank,* 101 U. S. 93, 25 L. Ed. 794.

Plaintiffs each averred that the several deeds executed to Keith were void, not that a mistake was made in their execution. Among the grounds for reformation of written instruments are mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, and to constitute a good cause of action the grounds upon which it is based must be alleged. The petition should aver facts showing how the mistake was made, whose mistake it was, and what brought it about, so that the mutuality may be made to appear. In all cases the mutual mistake or circumstances from which the same can readily be inferred should be alleged with precision and clearness. Pomeroy's Equitable Remedies, sec. 675; 34 Cyc. 971, 974. It is further said that if the evident object of the pleading, as shown by its averments, is reformation, it is not bad on demurrer because of a lack of a prayer to that effect; but in such cases reformation must be an issue by the pleadings. 34 Cyc. 976. The authorities sustaining the text are many, and all appear to require that the elements necessary for the reformation must be pleaded as grounds for relief. A few of the authorities will be reviewed: In *White v. Port Huron & Milwaukee Ry. Co.,* 113 Mich. 356, the rule is announced in the syllabus as follows:

"A court of equity will not reform a contract by the addition of new provisions, which, it is claimed, were embraced in the understanding between the parties when such contract was made, where there is no allegation of fraud or mistake in drafting."

In *Comer et ux. v. Himes et al.,* 49 Ind. 482, it was held that a complaint seeking the correction of a deed, which simply alleged that one estate was agreed for and another conveyed, was insufficient. It was said:

"If by fraud or mistake the contract, as reduced to writing, is different from that agreed upon, the court may, in a proper case, grant relief; but not in such a case as this is shown to be. For anything that is alleged, Nancy M. Himes knew perfectly well, when she received the deed, that it conveyed to her an estate for life only in the lands in question."

In *Gaffney Mercantile Co. v. Hopkins,* 21 Mont. 13, 52 Pac. 561, it was held that the mistake or imperfection relied upon must be pleaded. The opinion reads:

"Neither directly nor by inference does the complaint allege any mistake, mutual or unilateral, in the making of the contract, nor a mistake or inadvertence in its reduction to the form of a written stipulation. True the plaintiff avers that the stipulation was made upon the mutual understanding and with the intention that the plaintiff should not be liable to the extent expressed by the stipulation; but this, without more, is but an averment that the parties understood and intended that the contract should mean something different from that which it expressed. Upon well-settled principles, parties themselves may not so alter the terms of a written contract. * * * From the allegations of the complaint it is manifest that the plaintiff does not contend for the reformation of the written contract on the ground of fraud, accident, or mistake, but seeks to reform such contract, complete upon its face, and the terms of which were understood and assented to by the plaintiff at the time it was made, upon the ground that the parties understood and intended to interpret it in a sense contrary to that expressed by its language. This may not be done."

In *Meek v. Hurst,* 223 Mo. 688, 122 S. W. 1022, 135 Am. St. Rep. 531, it was held that, though a contract may be reformed and subsequently enforced in the same suit, a reformation will not be granted, unless the elements necessary to justify it are pleaded as grounds for relief.

It is said in *Sweet v. Marsh,* 133 App. Div. 315, 117 N. Y. Supp. 930, that:

"Parties go to court to try the issues made by pleadings, and courts have no right *impromptu* to make new issues for them on the trial, to their surprise or prejudice, or found judgments * * * not put in issue and distinctly and fairly litigated. *Wright v. Delafield,* 25 N. Y. 266; *Brightson v. Claflin Co.,* 180 N. Y. 76, 81, 72 N. E. 920, and authorities cited."

In the foregoing case, no allegation of fraud appeared in the complaint, and it was observed that a contract might only be reformed to express some material thing which the parties agreed upon and meant to put in, but left out, or by striking out or changing something which they did not mean to express. There was no allegation in the complaint of anything being left out

which was agreed upon. The parties undisputably put in the contract the price which they intended to pay for the land with the buildings and improvements thereon. There was no allegation that such price was based by defendants on a mistake in respect to the acreage, but only that there was a mutual mistake in respect to the number of acres, which mistake it was said might exist without there being any mutual mistake as to the price. It was said in part:

"A conjecture that the defendants would have asked less or accepted less for the land if they had known it contained only 152 acres cannot eke out a lack of an allegation on which to base such a conclusion"—citing *Moffett v. Jaffe,* 132 App. Div. 7, 116 N. Y. Supp. 402.

The rule applicable is well expressed in *Electric Goods Mfg. Co. v. Koltonski* (C. C.) 171 Fed. 550, in the language following:

"But relief cannot be granted for facts not charged with reasonable distinctness, although they may be suggested in the bill; for the old rule still prevails that pleadings must be taken most strongly against the pleader. It is for the protection of both complainant and respondent that, before proceeding to proofs, the bill should present clearly every issue to be raised; otherwise great hardships may be met in presenting the proofs; and difficult questions may arise in framing the decree; for the decree can only be *secundum allegata et probata.* Story's Equity Pleading, 257 *et seq.*  *  *  *  In the bill before me, the mutual mistake, suggested under one aspect, is not made reasonably certain, even by necessary implication. Nor do the pleadings clearly present a state of facts where a merely unilateral mistake has been made, but where the contract was written down differently from the complainant's intention, and thereby an unconscionable agreement has resulted, or a great hardship has been caused. Either of these aspects should be set out with distinctness, in order to be cognizable in equity, and in order that a suitable decree may finally be drawn; for the jurisdiction of the court in such matters is always exercised with caution, and only in cases where the pleadings are distinct and the proof is entirely satisfactory. Story's Equity Jurisprudence (Bigelow's Notes) 146; *Ivinson v. Hutton,* 98 U. S. 79, 25 L. Ed. 66; *Finley v. Lynn,* 6 Cranch, 249, 3 L. Ed. 211; *Oliver v. Insurance Co.,* 2 Curt. 295, Fed. Cas. No. 10,498; *Daniel v. Mitchell,* 1 Story, 172, Fed. Cas. No. 3,562; *Goddard v. Jeffrey,* 51 L. J. Ch. 57."

The eighteenth paragraph of the petition fails to charge facts constituting either a mutual mistake of fact or law, but simply avers that the parties to the deed, at the time thereof, and subsequent thereto, recognized that Jennie Kilgore had a life estate in the lands conveyed. Nor can mutual mistake by necessary implication arise from the facts alleged. Other cases announcing the rule above stated are *Williams v. Hamilton*, 104 Iowa, 423, 73 N. W. 1029, 65 Am. St. Rep. 475, and note; *Leavitt v. Palmer*, 3 N. Y. 19, 51 Am. Dec. 333; *Dunham v. New Britain*, 55 Conn. 378, 11 Atl. 354; *Crossland v. Shober*, 60 N. C. 562; *Grubb's Appeal*, 90 Pa. 228; *Lucas v. Boyd*, 158 Ala. 338, 47 South. 1017; *Benting v. Bell*, 137 Ill. App. 600; *Thomson v. Peake*, 38 S. C. 440, 17 S. E. 45, 725; *Caldwell v. Fulton*, 31 Pa. 475, 72 Am. Dec. 760; *Cauble v. Worsham et al.*, 96 Tex. 86, 70 S. W. 737, 97 Am. St. Rep. 871.

Plaintiffs' action not being brought to reform the deed made by Jennie Kilgore to Keith, on account of any mistake in the character of the estate intended to be conveyed, but, instead, to establish the invalidity of the deed for any purpose, it was error for the trial court to admit parol testimony tending to vary and contradict its terms. Upon this testimony, erroneously admitted, was predicated the court's findings of fact and the decree reforming the deed. Having thus concluded, it is unnecessary to pass upon the other legal propositions presented.

The judgment of the trial court should therefore be reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.