H. H. HYMAN, *Plaintiff in Error*, v. R. M. DILLON AS CHIEF OF POLICE OF THE CITY OF MIAMI, *Defendant in Error*.

Opinion Filed May 3, 1920.

1. A city ordinance prohibited any person or corporation from selling or supplying to the inhabitants of the city water, for human consumption, which shall have been taken from wells or other sources of supply "in or without" the city limits, unless the vendor shall hold a valid permit from the City Board of Health.   The manager of a corporation which supplied water to the inhabitants of the city, which water was taken from wells in or near the city, was arrested and charged with the offense under the ordinance of "supplying to *patrons*" of the *corporation* water for human consumption, "without first securing a permit," etc.   Whether the charge was a valid one not decided.

2. Municipalities acting under authority from the State may enact ordinances which are necessary, for the public health though the requirements of such ordinances impose condi-

tions upon persons or corporations not required in contracts which they may have with the city for the particular service affected by the ordinance.

3. Ordinances prohibiting the sale for human consumption of water containing certain elements or compounds as unwholesome or unfit for use may not establish a certain standard of mineral content and declare that water which contains a greater quantity of such minerals is unwholesome if such standard so fixed by the ordinance is not accurate.

A writ of error to the Circuit Court for Dade County, H. Pierre Branning, Judge.

Judgment reversed.

WHITFIELD AND WEST, J. J., dissent.

*Robt. H. Anderson, Scott M. Loftin* and *Brown, Twyman & Scott,* for Plaintiff in Error.

*S. P. Robineau,* for Defendant in Error.

ELLIS, J.—The plaintiff in error is the manager of the Miami Water Company, a corporation, which supplies water to the inhabitants of the City of Miami by a system of water works. The corporation is the successor of the Florida East Coast Hotel Company, which in 1900 obtained an exclusive franchise to operate within the city water, electric and sewerage plants to supply the city and its inhabitants with water, electricity and sewerage conveniences. In 1909 the Florida East Coast Hotel Company sold to the Miami Water Company the system of water works and assigned to it all the rights and privileges which the Florida East Coast Hotel Company

had under its franchise and from that time the Miami Water Company has supplied water to the people of the city for domestic and other purposes.

In August, 1919, the City Council passed an ordinance entitled "An ordinance to prevent and punish the sale of impure water in the City of Miami." Under the provisions of this ordinance no person or corporation was permitted to sell or supply, to the inhabitants of the city, water for human consumption which shall have been taken from a well or other sources of supply "in or without" the limits of the city, unless the vendor shall hold a valid permit from the Board of Health of the city. Such permits the Board of Health were required to issue after an inspection of the plant and source of supply the board should find the same to be in a "clean and sanitary condition and the water satisfactory for human consumption according to the standard fixed by this ordinance." These permits were to be good for three months and renewed only when after inspection the board should find the "water source of supply, tanks, receptacles, appliances and plant to be in accordance with the standards hereinbefore prescribed." The ordinance provides that every receptacle for storing water for human consumption should be cleaned four times a year and every water main flushed as often. It was also provided that it should be unlawful to sell, serve or supply "for a consideration any water for human consumption containing more than 300 parts per million of chlorine in the form of magnesium or sodium chlorides, or more than 250 parts per million of carbonates in the form of calcium or magnesium carbonates," or more than "200 bacteria to 1 cubic centimeter, or which is not potable, or which

cannot be used for human consumption without danger to human life."

Section 5 of the ordinance provides for a fine not exceeding two hundred dollars and sentence of imprisonment to be imposed upon any one who "violates any provision" of the ordinance, and it provides that "each day's continuance of any such violation shall be deemed a separate offense."

Section 6 declared the "health and welfare" of the city to be in peril and that the ordinance was for the "immediate preservation of the public peace, health and safety," and should therefore go into effect upon its adoption and approval.

Mr. Hyman, the petitioner, was arrested on September 11th, 1919, upon a warrant from the municipal court in which he was charged with the offense of "supplying to patrons of the Miami Water Company for human consumption, water taken from a well within the limits of the City of Miami, *without first securing* a *permit* from the Board of Health of the City of Miami." The petitioner was tried, convicted and sentenced to pay a fine of $25.00, or to serve a term of 25 days in the city jail. In default of the payment of the fine he was committed to the custody of the respondent as chief of police of the city.

The petitioner then applied to the Judge of the Circuit Court for a writ of *habeas corpus* and moved for his discharge, contending that the ordinance of the city was "not applicable and is void as to him, and that he is not guilty of the charge," and that the ordinance is unconstitutional and void, that his conviction is illegal and that he is deprived of his liberty without authority of law.

The writ was issued. The return of the respondent was that he held the petitioner under the authority of the judgment of the municipal court, "as described in the petition and writ." That the ordinance was valid and the requirements thereof reasonable.

Prior to the filing of this return the respondent moved to quash the writ upon the ground that the petition and exhibits showed that the petitioner was held in lawful custody. This motion was denied.

The court heard the case as presented by the petition, the return and the evidence and decided that the respondent's custody of the petitioner was not illegal, that the ordinance under which he was convicted was valid and that the petitioner be remanded. To this judgment a writ of error was allowed and taken by the petitioner.

The petition shows that there was an alternative jail sentence and that petitioner was committed to the custody of the respondent in default of the payment of the fine. There is no showing made in the record of the existence of an ordinance requiring the chief of police to detain one in custody who fails to pay a fine lawfully imposed. While the ordinance under which the petitioner was convicted provides for the imposition of a jail sentence, or both fine and imprisonment, it does not authorize the imprisonment of one who fails to pay a fine imposed. The judgment seems to have been that the petitioner "pay a fine of $25.00 or serve the term of 25 days in the city jail." This judgment was neither to pay a fine nor to be imprisoned. Its illegality was not questioned and it seems that the court ordered petitioner into custody in the event he failed to pay the fine as a means of compelling obedience to the judgment which was treated as

one imposing a fine. The point was not raised, however, so it will be passed. See Anderson v. Shackleford, 74 Fla. 36, 76 South. Rep. 343.

The petitioner's contention is, first, that the franchise under which it operates is a valid existing contract between the Miami Water Company and the city, and that the ordinance under which he was convicted constitutes an attempt on the part of the city to alter or amend the terms of the contract without the company's consent; second, that the requirements of the ordinance are unreasonable in the specifications as to the quantity of chlorine and carbonates which water offered for sale should not contain; third, that the ordinance is unreasonable because the company which supplies the city with water under its contract, the ordinance of 1900, furnishes the natural available water, that there is no practical way of eliminating the chlorine content which tends to make the water salty, and the carbonates can be eliminated only by the installation of an expensive plant for that purpose which would require a long time and large sums of money to erect in the meantime each days' supplying of water would constitute a new offense and the accumulated penalties would be confiscatory of the property and the imprisonment of its officers would prevent the accomplishment of the work of installing the necessary plants.

It is claimed that on account of these provisions the ordinance deprives persons subject thereto of due process of law and the equal protection of the law, and operates to deprive them of the right to test its legality in the courts and is therefore in violation of the State and Federal Constitutions.

It is pointed out by counsel for defendants in error that the petitioner was charged and convicted for "failure to procure a permit" and "not for selling water that was not up to the standards fixed by the ordinance." In reply to that suggestion it is claimed that the ordinance is not applicable to petitioner at all. The corporation and not he owns the franchise. It is the corporation and not he that supplies the water, owns the tanks and receptacles which are to be inspected and to whom the permit if any should be granted.

The ordinance makes no provision for the punishment of the officers or employees of a corporation which sells or offers for sale water for human consumption within the city. And there is no evidence in the record that the petitioner was engaged in any effort to sell or supply water to the inhabitants of the city, except as an officer of a corporation, whose affairs and policies are controlled by trustees. When speaking of the relative cost of obtaining water from the canal and putting in a water-softening plant, the petitioner testifying said that he did not know what the trustees would have done if the company could have obtained its water from the canal.

The ordinance makes no provision for the infliction of vicarious punishment. If any offense or violation of the ordinance has been committed it was committed so far as the record discloses by the Miami Water Company, which failed to "procure the permit," and from whose wells the inhabitants of the city are supplied. The question sought to be presented here is the validity of the 1919 ordinance considered as an amendment of the ordinance of 1900 which constitutes, the contract between the city and the water company, or considered as a regulation within the power of the city for the preser-

vation of the public health. It is generally conceded except by the ultra strict constructionists, that the constitutional prohibition upon State laws impairing the obligation of contracts does not restrict the power of the State to protect the public health, etc., as it may be involved in the execution of such contracts.

The city, presumably acting under authority from the State, may enact such ordinances as are necessary for the protection of the public health, even when the requirements of the ordinances impose upon certain persons or corporations having contracts with the city the observance of conditions not mentioned or required in such contracts. But the test of the validity of such ordinances is reasonableness both as to the object to be obtained and the method of obtaining it. If it is assumed that the contract of 1900 contemplates that wholesome water was to be supplied by the company for human consumption, the test of reasonableness as applied to the ordinance of 1919 would be whether the water furnished by the water company is wholesome. Because if it is wholesome but contains some matter bacteriological or mineral which is different in character and quantity from the standard fixed by the new ordinace the end to be attained, namely, the preservation of the public health, is preserved under the old as well as it would be under the new ordinance, and the latter would be merely an unnecessary, capricious, intermedling and interference with the obligations of the contract.

It is not within the power of a municipality in the exercise of its legislative function in behalf of the public health to declare that all water which contains a certain percentage of solid matter is unwholesome and unfit for use if such is not the hygienic fact. The force of the

ordinance must rest upon the accuracy of the standard. Now to determine the reasonableness of the standard prescribed by the ordinance of 1919 considered as a regulation for the public health, which imposes upon the Miami Water Company conditions not required by the contract of 1900 requires the presence in court of the water company to raise the question. Otherwise it would be a moot one and the opinion of this court purely *obiter dicta*.

The facts are that the Miami Water Company is engaged in the business of supplying water to the city for consumption by its inhabitants. It operates under a franchise obtained by its predecessor in 1900. The ordinance was evidently intended to require that company to supply water containing not more than a certain percentage of solid or mineral matter, upon the theory that the water furnished at present by the company is unwholesome if it contains more solids than prescribed. The power of the municipality to require this to be done exists provided the standard set by the new ordinance in fixing a maximum of chlorine and carbon content marks the limit beyond which water becomes impure and unwholesome.

Not to regard the insinuations in the evidence and innuendoes of counsel that the purpose of the ordinance was commercial and not hygienic, if we inquired into the reasonableness of the requirements of the ordinance it would be difficult to reconcile the specification limiting the chlorine content in the form of "magnesium or sodium chlorides" to 300 parts per million with any other purpose than one to secure water agreeable to the taste, rather than necessary to the preservation of the public health. The evidence which is preserved in the bill of

exceptions and to which we may refer to ascertain whether the city has prescribed a reasonable regulation, leaves the matter very much in doubt as to whether 300 parts per million of chloride of sodium renders water unwholesome or merely unpalatable, but if it contained 200 parts of chlorine in that form and 110 parts in the form of chloride of magnesia it would seem to come within the condemnation of the ordinance, notwithstanding that chlorine in those forms and in that proportion would be neither unwholesome nor unpalatable. We will not undertake, however, to determine the reasonableness or unreasonableness of the ordinance in a case such as this where the plaintiff in error is one to whom the provisions of the ordinance do not apply as he appears not to be engaged in the sale of water for human consumption within the meaning of the ordinance and therefore could not obtain a permit and who cannot raise the question of the violation of the obligation of the contract between the city and water company.

The judgment of the court is reversed and the prisoner ordered to be discharged.

BROWNE, C. J., AND TAYLOR, J., concur specially;

WHITFIELD AND WEST, J. J., dissent.

TAYLOR, J.—I concur in the conclusion reached, on the ground that the ordinance is unreasonable, arbitrary and capricious.

BROWNE, C. J., concurring.—I concur in the conclusion, that the judgment should be reversed and the prisoner discharged, but not entirely on the grounds upon which that conclusion is based.

The ordinance attacked provides in part: "No person, firm or corporation shall sell, or supply, or offer to sell or supply within the City of Miami, Florida, for a consideration, any water for human consumption, which shall have been taken from a well or other sources of supply within or without the limits of the City of Miami, unless the vendor shall hold a valid permit from the Board of Health of the City of Miami," and proceeds to describe what shall be necessary before the permit shall issue.

Section 3 provides in part: "It shall be unlawful for any persons, firm or corporation to sell, serve or supply for a consideration, any water for human consumption containing more than 300 parts per million of chroline in the form of magnesium or sodium chlorides, or more than 250 parts per million of carbonates in the form of calcium or magnesium carbonates."

Section 4 provides in part: "It shall be unlawful for any person, firm or corporation to sell, serve or supply for a consideration any water for human consumption containing more than 200 bacteria to 1 cubic centimeter, or which is not potable, or which can be used for human consumption without danger to human life."

The petition alleges that H. D. Hyman, Manager of the Miami Water Company, was charged with "supplying to the patrons of the Miami Water Company for human consumption water taken from a well within the limits of the City of Miami without having secured a permit from the Board of Health of the City of Miami pursuant to said ordinance," and that "he was convicted on said charge."

It is not alleged in the petition, nor contended by counsel for petitioner that the accused did not supply the water. The sole contention is that the ordinance is unconstitutional and void for the reasons set out in the petition.

The petitioner was the manager of the Miami Water Company, a foreign corporation, and if by virtue of such management he supplied water to the inhabitants of Miami for the Miami Water Company, he comes within the terms of the ordinance which prohibits any "person, firm or corporation" from selling or supplying, or offering to sell or supply within the City of Miami for a consideration any water for human consumption without a valid permit from the Board of Health of the City of Miami."

In the opinion of the majority of the court it is said: "The corporation and not he owns the franchises. It is the corporation and not he that supplies the water, owns the tanks and reservoirs which are to be inspected, and to whom the permit, if any, should be granted."

The doctrine of this proposition is that because the corporation owns the franchises that it alone and not the manager, whom it puts in charge of its business which procuring, selling and supplying water, can sell or supply the same. By a long line of decisions, a contrary doctrine seems to be recognized by the courts in this country.

In the case of La Norris v. the State, 13 Tex. App. 33, the defendant was an employee of the Pullman Palace Car Company, and had charge of a car belonging to the company where there was a small bar from which liquor belonging to the Car Company was sold. It was proven that the defendant sold two drinks from this bar to

passengers. Neither the defendant nor his employer had paid the occupation tax required by the statute. The court in passing upon the phase of the case that we are here considering, said:

"Appellant also claims that as he was only an *employe* of the Palace Car Company, who were the proprietors of the business, he is not subject to this prosecution. We think he was 'a person engaged in the business,' in the meaning of the statute. To hold otherwise would render the law practically ineffectual in all cases where the proprietor or owner of such business was beyond the jurisdiction of the courts of this State, as in this case. A non-resident could, through agents and employees, violate this law with impunity." La Norris v. The State, 13 Texas, 33.

In the case we are considering, a corporation of the State of New Jersey placed a manager in Miami where its property is situated, and water from its wells was to be sold, served and supplied to the people of Miami. If we adopt the construction, that the corporation alone sold, served and supplied the water, it would enjoy immunity, although the water which the manager of the corporation supplied its patrons was deleterious to the public to the extent of being poisonous.

In Roberts v. O'Connor, 33 Me. 496, the court said:

"It is not denied that the sale made by the defendant was unlawful, but the defense set up is that he made it, not on his own account, but merely as the servant of another person; in other words, that another person gave authority to the defendant to do an unlawful act. But no person had the right to give such authority, and it can furnish to the defendant no protection."

In the case of Commonwealth v. Hadley, 11 Met. 66, the court said:

"Then we are brought to the question of construction, if indeed there be room for construction, of those words of the statute, 'any person who shall'sell.' It appears to us that one who offers an article for sale, either upon the application of the purchaser or otherwise, and who, when the offer is accepted, delivers the article in pursuance of the offer, does 'sell' or make a sale, according to the ordinary sense and meaning of that term. It would seem strange and contradictory to maintain that one who sells goods on commission, or as the factor, agent or salesman of another, does not sell them. The argument assumes that a sale must be construed to be a contract by which the owner of property alienates it and transfers his title to another. But this is a very limited view of the subject. It is not less a sale, and even a valid sale, when made by the authority of the owner. So, the naked possession of property, however obtained, is some evidence of title; the holder may make a sale *de facto*, which can only be defeated by one having a higher title, and which may be ratified by the assent of the owner. The statute prohibits all sales by unlicensed persons, as well sales *de facto* as sales by an owner, and therefore the case is within the words of the statute."

It is true these are cases where question of the sale of liquor was involved, but I can see no difference in principle between what constitutes a sale where the article dealt in is liquor, and where the article is water that is deleterious to the public health.

If the manager or employee of a company that owns intoxicating liquors may be convicted of selling the same where he delivers the company's goods to another

and receives money from the purchaser for the company, then the manager of a water company that supplies water belonging to a company who has not obtained a permit for that purpose comes within the same rule.

"A barkeeper, whose business is to sell fermented, vinous or spiritous liquors, is within the meaning of R. C. 3619, which prohibits any person who keeps these liquors from selling them to minors, etc., whether he owns the saloon or the liquors, or is merely employed to sell them." Marshall v. The State, 49 Alabama, 21.

"The statute makes it a positive requirement that a license shall be first obtained before a sale can be made without incurring the penalty denounced. It makes such an act indictable, irrespective of guilty knowledge, and ignorance of fact, however, sincere and honest, cannot avail as a defense. Hence it is no defense to an indictment for selling liquor without a license that the defendant sold as the agent of another person." State of Oregon v. Geo. Chastain, 19 Oregon, 176.

"Whoever, being of legal discretion, acts tortiously, is personally responsible to the injured party; and the fact that it was done as the agent, or by the request or command of a third person, is no excuse. In analogy to a rule so wholesome in civil cases, it is time it should be written, if it be not already, that in misdemeanors of the class we are considering, all who thus aid, assist or abet are guilty as principals. In fact, no reason is perceived for entertaining such an excuse, in a case like the present, that would not be applicable in reference to graver offenses, and the courts should extend to it not the slightest countenance. It may be admitted that it would be most appropriate, in all cases, to indict the principal where

he was known; but the object of the law should not be defeated by the fact that the owner of a dram shop so managed as to keep himself concealed from the inquest of the State, by interposing another person as the ostensible offender." Robert Hays v. The State of Missouri, 13 Mo. 246.

It is not necessary to discuss whether this is one of the class of contracts the obligation of which the constiution protects from impairment, because the standard prescribed by the ordinance of 1919 is unreasonable and not a proper exercise of the police power for the protection of the health and welfare of the people of the City of Miami, and as the opinion strongly intimates, the ordinance is "an unnecessary, capricious, intermeddling and interference with the obligations of the contract," and I quite concur in the view of Mr. Justice Ellis where he discusses the unreasonableness of the ordinance.

WHITFIELD, J., dissenting.—This is a *habeas corpus* proceeding. It is alleged in the petition for the writ that "your petitioner was arrested on a warrant issued pursuant to affidavit charging him with supplying to patrons of the Miami Water Company for human consumption water taken from a well within the limits of the City of Miami, without first having secured a permit from the Board of Health of the City of Miami pursuant to the ordinance; that on the 17th day of September, 1919, your petitioner was tried on said charge in the Municipal Court of the City of Miami, and although your petitioner maintained that said ordinance was not applicable to the Miami Water Company and its agents, including your petitioner, on account of said franchise above referred to, and that said

ordinance, on account of the penalties sought to be imposed, was unconstitutional and void, nevertheless he was convicted in said court on said charge and sentenced to pay a fine of $25.00, or to serve the term of 25 days in the city jail of Miami, and in default of the payment of said fine your petitioner was committed into the custody of R. M. Dillon, as Chief of Police of the City of Miami, to enforce the judgment of the court aforesaid, and that he now is in such custody of the said R. M. Dillon, as Chief of Police in the City of Miami, Florida."

The return to the writ states that the petitioner is held "by authority of the judgment of the Municipal Court of the City of Miami, as described in the petition." A discharge from custody is sought, not on the ground that the petitioner is not supplying water as alleged, but in effect that he is protected by the franchise of the Water Company from the regulations and penalties prescribed by the ordinance of the city, and that the ordinance under which he is penalized is an unwarranted interference with private rights and unreasonable in the standards it fixes, in its requirements and in the penalties it imposes.

If the petitioner may rely upon the water company's franchise to protect him from the operation of the ordinance complained of, he can have no protection thereunder that is not afforded to the water company by the franchise.

The constitution provides that "the Legislature is invested with full power to pass laws for the correction of abuses * by persons and corporations * performing * services of a public nature; and shall provide for enforcing such laws by adequate penalties and forfeit-

ures." Sec. 30, Art. XVI. The Legislature shall have power to establish  *  municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter or amend the same at any time." Sec. 8, Art. VIII. See State *ex rel.* Ellis v. Tampa Water Works Works Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; Gainesville Gas & Electric Power Co. v. City of Gainesville, 63 Fla. 425, 58 South. Rep. 785; Capital City Light & Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 South. Rep. 810; State *ex rel.* Ellis v. Tampa Water Works Co., 57 Fla. 533, 48 South. Rep. 639, 22 L. R. A. (N. S.) 680.

There can be no doubt of the power and duty of the State through its city governments to regulate the supplying of water in municipalities for human consumption to conserve the public health and general welfare; and it is not contended that the City of Miami is without such power. It is argued that the ordinance adopted by the city under the power is inapplicable to the Miami Water Company because of its charter rights; and that the ordinance is an unreasonable exercise of the police power. All franchise rights of the water company were acquired and are held and used subject to a reasonable exercise of the police power of the State; and such governmental authority may be exerted through the instrumentality of the city. Section 8, Art. VIII, and Section 30, Art. XVI, Constitution; Gainesville Gas & Electric Power Co. v. City of Gainesville, *supra;* City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; Tampa Water Works Co. v. Tampa, 199 U. S. 241, 26 Sup. Ct. Rep. 23; City of Gainesville v. Gainesville Gas & Electric Power Co., 65 Fla. 404, 62 South. Rep. 919, 46 L. R. A. (N. S.) 1119; Atlantic Coast Line R. Co. v. City

of Goldsboro, North Carolina, 232 U. S. 548, 34 Sup. Ct. Rep. 364; City of Englewood v. Danver & South Platte Ry. Co., 248 U. S. 294, —— Sup. Ct. Rep. ——; City of Pawhuska v. Pawhuska Oil Co., 39 Sup. Ct. Rep. 526.

Reasonable police regulations do not violate organic property rights, even though they impose some modicum of burden upon those whose activities are regulated in the interest of the general welfare. State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 57 Fla. 522, 49 South. Rep. 43; King Lumber & Mfg. Co. v. Atlantic Coast Line R. Co., 58 Fla. 292, 50 South. Rep. 509; State *ex rel.* Railroad Com'rs. v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 South. Rep. 394; State *ex rel.* Railroad Com'rs. v. Louisville & N. R. Co., 63 Fla. 274, 57 South. Rep. 673; Dutton Phosphate Co. v. Briest, 67 Fla. 370, 65 South. Rep. 282; State *ex rel.* Simpson v. Ackerly, 69 Fla. 23, 67 South. Rep. 232; Hudson County Water Co. v. McCarter, 209 U. S. 349, 28 Sup. Ct. Rep. 529; Knoxville Water Co. v. Knoxville, 189 U. S. 434, 23 Sup. Ct. Rep. 531. Nor do such regulations defeat the purposes for which the franchise rights were granted. The ordinance complained of does not limit or impair the franchise rights of the water company. It prescribes reasonable regulations for the exercise of the franchise rights conferred upon the company. Manifestly the franchise rights of the water company do not relieve individuals or the company of the duty to observe reasonable police regulations designed to preserve the health of the public. Such regulations may take the form of permits to be granted by the city health authorities upon an examination of the conditions and properties of the water being furnished and of the utilities through which the water is supplied, so as to maintain the standard content prescribed by the ordinance. This seems to be an appro-

priate means to accomplish a lawful purpose; and it does not clearly appear that the regulations are merely arbitrary or unduly burdensome. The fine imposed is apparently not excessive, and it will not be assumed that the authority conferred will be abused in its exercise. All vaid ordinances should be reasonably enforced. Any abuse of authority in exercising powers lawfully conferred upon a municipality may be remedied in due course of law.

Perhaps there is no absolute standard of purity or healthfulness in water for human consumption. The ordinance appears to have a proper relation to the public health of the city populace. The standards fixed by the ordinance are *prima facie* proper and reasonable; and those who assail the correctness or the utility of such standards as a means of conserving the public health or general welfare have the burden of showing their inutility or unreasonableness. The *prima facie* appropriateness and reasonableness that are attributable to the ordinance for the purpose designed have not been clearly overcome by the evidence adduced before the Circuit Judge and brought here in the transcript, and it does not affirmatively appear that, as a practical matter, it is impossible to comply with the ordinance.

WEST, J., concurs.