ROBERT C. DUNHAM *vs.* THE CITY OF NEW BRITAIN.

Hartford Dist., May T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, JS.

An act authorized the borough of New Britain to appoint three water commissioners, who were to have power to purchase for the borough a certain stream of water and the lands necessary for the construction of a reservoir, for a water supply for the borough. *H* and *R* sold them sundry pieces of land needed, conveying them by absolute deeds without reservation, but taking as part consideration a written agreement from the water commissioners that they should have the right to use the water of the pond for boating and fishing. After the reservoir was completed *H* and *R* established a pleasure resort on the shore and kept boats to let for sailing and fishing, and thus built up a profitable business. The city of New Britain, which had succeeded to all the rights of the borough, finding that this use of the pond tended to pollute it and created an aversion to the use of the water for domestic purposes, passed an ordinance (under power given by the legislature) wholly prohibiting such use. In a suit brought by *R*, who held the rights of *H* and *R*, for an injunction against the enforcement of the ordinance, and for a correction of the original deeds to the borough so that the rights provided for by the agreement of the water commissioners should be reserved on the deeds, it was held:

1. That the deeds could not be corrected, since they were precisely as both parties intended them, the agreement as to the grantors' use of the pond being intentionally left wholly to the written agreement.

2. That the plaintiff could not have acquired the right to the use of the pond by prescription, as his use had been under that agreement.

3. That as the commissioners had power to purchase lands at their discretion, they had power to fix the terms of the purchase, and had a right to make the agreement as a part of the terms of purchase.

Dunham v. City of New Britain.

4. But that the ordinance of the city prohibiting the use of the pond for boating and fishing, authorized by the legislature, was a valid exercise of the police power of the state, and its enforcement was not to be enjoined against.
5. That if the plaintiff had any redress it was not by the present proceeding.

[Argued May 26th—decided November 18th, 1887.]

Suit for an injunction to restrain the defendant city from enforcing a city ordinance; brought to the Superior Court in Hartford County, and heard before *Stoddard, J.* Facts found, and judgment rendered for the defendant. Appeal by the plaintiff. The case is fully stated in the opinion.

*W. C. Case* and *H. H. Holcomb*, with whom was *W. H. Ely*, for the appellant.

1. The court below erred in excluding the parol evidence offered by the plaintiff as to the agreement of the water commissioners of the borough that the Dunhams should have the right of keeping on the lake a reasonable number of boats, to be used by themselves and to be let for hire to others for sailing and fishing. The land conveyed by the Dunhams to the borough exceeded in value the amount of money received, and the principal consideration for the land was this agreement of the borough. They desired that this reservation be put into their deeds, but were prevailed upon by the water commissioners to let it rest on a separate agreement. The fact that the whole contract does not appear in the deeds, does not estop the plaintiff from proving this agreement by parol evidence. *Collins* v. *Tillou*, 26 Conn., 368; *Clarke* v. *Tappin*, 32 id., 56; *Walker* v. *City Council*, Bailey Eq. (So. Car.), 443. But clearly this parol evidence was admissible for the purpose of the correction of our deeds by inserting the matter in them as a reservation. Parol evidence is always admissible for the correction of deeds, and often the correction can be made on no other evidence.

2. The court erred in holding that the plaintiff had not acquired by prescription the right to fish and boat upon the lake. It is found that " the plaintiff has exercised the right of

using and letting for use boats for the purpose of fishing and boating upon the lake uninterruptedly for more than twenty-five years, claiming the right so to do." This is enough to create a prescription. It can make no difference that the right is sought to be gained against a borough. The law is the same as to municipalities and individuals. And it can make no difference that the use by the Dunhams has not been absolutely exclusive. It is found simply that other persons " have been in the habit of keeping pleasure boats to some extent upon the lake." The rule requiring that possession shall be exclusive does not mean that the possession must have been of such a nature that no other person besides the one claiming by prescription has done or could have done what the owner of the dominant estate claims the right to do by prescription. It means only that the exercise of the right must have been exclusive so far as the owner of the servient estate is concerned, and to prevent possession under a claim of right from being exclusive as against the owner, the owner must perform some act that would reinstate him in possession, and " it is not every entry upon the premises without permission that would disturb the adverse possession." " An entry for other purposes than those connected with a right to enter would not be sufficient to break the continuity of exclusive possession in another." *Burrows* v. *Gallup*, 32 Conn., 499. " It is not necessary that the one who claims the easement should be the only one who can or may enjoy that or a similar right in another's property," but that his right should not depend for its enjoyment upon a similar right in others, and that he may exercise it under some claim existing in his favor independent of all others. Washburn on Easements, 144, and cases cited; *Curtis* v. *Angier*, 4 Gray, 547.

3. The ordinance which the borough is claiming the right to enforce is unreasonable and therefore of no legal validity. The court below has found the ordinance to be reasonable so far as its reasonableness is a question of fact. But it is a question of law, or at most a mixed question of law and fact which cannot be settled by the court below. That court has found that " the use of the waters of the lake for the purpose

of fishing or sailing thereon is not injurious in itself, and that agitation of the surface of the water is beneficial." Can acts be prohibited which are lawful and innocent in themselves simply because they afford opportunities to commit nuisances? Upon the margin of this lake, nearly surrounding it, lies a highway, the wash and filth from which inevitably runs into the lake. Can the city of New Britain discontinue that highway because its use affords some opportunity to contaminate the water which some of the people of New Britain drink? "Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conclusive. If it passes an act ostensibly for the public health and thereby destroys or takes away the property of a citizen or interferes with his personal liberty, then it is for the courts to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health. It matters not that the legislature may in the title to the act, or in its body, declare that it is intended for the improvement of the public health. *Matter of Jacobs*, 98 N. York, 110.

*F. L. Hungerford* and *P. J. Markley*, for the appellee.

LOOMIS, J. The material facts found by the trial court in this case are in substance as follows: In 1857 the water commissioners of the then borough of New Britain, acting under an act of the legislature passed that year, purchased of the plaintiff, and of his father, Harvey Dunham, now deceased, and of some other parties, certain lands for the construction of a reservoir for supplying the borough with water for public and private purposes; and sundry absolute warranty deeds were executed and delivered to the borough of the lands so purchased, and possession was taken by the latter and a reservoir was constructed upon the land and filled with water and used by the borough until the present city of New Britain was chartered, which succeeded to all the rights, privileges and property of the borough, and ever since the reservoir has constituted the sole water supply of the city and is largely used for domestic purposes.

It was agreed that the borough paid a money considera-tion for the lands bought of the plaintiff and his father, but there was no evidence of the amount paid, except the state-ment of the consideration in the several deeds. It is not found that the money consideration was in fact inadequate, but it is found that the Dunhams so regarded it, and that they were induced to part with the title to the land referred to, in part because of an agreement in writing signed and delivered to them by two of the water commissioners, and in part because they thought that the establishment of the reservoir and the use of its waters for fishing and pleas-ure, would render their adjacent lands more valuable. The agreement referred to was as follows :

"WHEREAS, the Warden, Burgesses and Freemen of the borough of New Britain are about to pond 'Shuttle Mead-ow,' on the mountains in the east part of Southington, for the purpose of supplying water to the inhabitants of New Britain under the charter granted to them by the last legis-lature, and a large portion of the land to be covered by the water of said pond has been sold and conveyed to said War-den, Burgesses and Freemen of the borough of New Britain by Harvey Dunham and Robert C. Dunham of Southington : Now, therefore, the said Warden, Burgesses and Freemen of the borough of New Britain, in consideration of the sale and conveyance aforesaid, do hereby give and grant unto the said Harvey Dunham and R. C. Dunham the right to sail on said pond and take fish therefrom at all times ; said privilege not to be enjoyed by them exclusively, but to secure to them in common with the grantors and such other persons as said grantors shall license during their natural lives. In witness whereof the grantors, by the hands of their water commis-sioners, duly appointed according to the provisions of said charter, have hereunto affixed their name and seal this 1st day of December, 1857.

, (L. S.) THE WARDEN, BURGESSES AND FREEMEN
OF THE BOROUGH OF NEW BRITAIN.
F. T. STANLEY, } *Water*
G. M. LANDERS, } *Commissioners.*"

Soon after this the Dunhams established upon the shore of the reservoir, better known as "Shuttle Meadow Lake," upon land owned by them, or one of them, contiguous to the land conveyed to the borough, a pleasure resort, and the frequenters of the place have used the lake for boating, sailing and fishing in boats hired of the plaintiff or his father, and in this way a profitable business was established, which at the commencement of this suit belonged wholly to the plaintiff. A large number of other persons have also been in the habit of using the lake for boating, sailing and fishing. The use of the waters of the lake for boating, sailing and fishing is not in itself injurious, not a nuisance, and the agitation of the surface of the water is beneficial, but, as a necessary incident to or concomitant of such use, a considerable quantity of impure and objectionable and decayed and decomposing matter, filth and various excreta of the human body is, from day to day, deposited in the water of the lake. But such deposit has not been, and is not at present, in sufficient quantities to be appreciable in its effect upon the water, but the knowledge on the part of the public of such deposit produces disgust and tends to prevent the use of the water by the public for domestic purposes. If the germs of infectious or contagious diseases should be deposited at or near the entrance of the supply pipes, such diseases might be communicated to the people of the city using the water for domestic purposes. Under these circumstances the common council of the city of New Britain, acting pursuant to power given it by the legislature in 1885 to make such orders and ordinances as it should see fit for the better protection and preservation of the water of the lake, passed an ordinance prohibiting under a penalty, among other things, boating, sailing and fishing on the lake. The passage and enforcement of this ordinance is what has given rise to this suit. It has had the effect to keep the public away from the lake, and thus the plaintiff loses the profit of his pleasure resort, and in this manner only the acts of the defendants substantially impair the plaintiff's business and depreciate the value of his property. That the ordinance is reasonable is found by the

court below as a matter of fact and so held by it as a matter of law. The plaintiff seeks in this suit to enjoin the city from enforcing the ordinance. He also claims damages for its enforcement; and further claims that the deeds of conveyance from him and his father, through whom he claims his present title, should be reformed so as to reserve to him the privilege of boating, sailing and fishing on the lake, or that the deeds should be set aside and declared void.

The decision of the court below was adverse to the plaintiff on all of his claims, and the only grounds of his appeal are: (1.) The exclusion of certain testimony by which the plaintiff claimed to be able to prove that in the negotiations for the sale of his and his father's land to the borough for the purpose of a reservoir, it was agreed by certain members of the board of water commissioners that the Dunhams should have the privilege of boating and fishing on the lake forever, and that this privilege, instead of being reserved in the deeds, as the Dunhams wished, should be secured to them by a separate agreement. (2.) The refusal of the court to hold as a matter of law upon the evidence that the plaintiff had acquired by prescription the right to fish and boat upon the lake.

The assignments of error restrict the questions for review to a very narrow compass. No complaint is made that the court upon the facts as found denied the injunction and the reformation of the deeds, or refused to set them aside, or to award damages, nor is there any complaint because the court held the ordinance a valid one. To prevent the possible implication that it might have been better for the plaintiff had these matters been assigned for error, we will say in passing that in our opinion the decision of the court upon these points upon the facts as found was correct. The ordinance, having for its object the preservation of the public health and being adapted to that object, and having been authorized by the legislature, was a proper and valid exercise of the police power of the state; and even if the ordinance were invalid, it is obvious that there would have been an adequate remedy at law, so that in either event no error could

have been predicated upon a denial of the injunction. *Burnett* v. *Craig*, 30 Ala., 135; *Garrison* v. *City of Atlanta*, 68 Geo., 64. And whatever the record may suggest as to a possible claim for damages on the part of the plaintiff, the facts as found do not lay an adequate foundation for such a judgment. We proceed then to the consideration of the only errors assigned, and, as to these, we think it is clear that the plaintiff's position is untenable.

The parol evidence of the conversation and negotiations between the Dunhams and the water commissioners, which was excluded by the court, was undoubtedly relevant to that part of the complaint which prayed for a reformation of the deeds, and was admissible upon that issue, but it is manifest that if the evidence had been received the result would have been the same, for, upon the facts which the plaintiff offered to prove, taken in connection with the other conceded facts, the deeds could not properly have been corrected.

No foundation for such relief was laid or even claimed. There was neither a mutual mistake nor even a mistake on the part of the plaintiff concerning the deeds. The deeds were knowingly made and executed on the part of the Dunhams precisely as the water commissioners insisted they should be, without any reservation or provision concerning the plaintiff's right to use the lake for boating and fishing. And besides, the parol agreement was all merged in the written agreement signed by the water commissioners, which was accepted by the Dunhams without any objection or claim then or since that it did not truly embody the agreement of the parties on that subject, and it was this agreement which the court finds in part induced the plaintiff and his father to execute and deliver the deeds; and it is very significant that the complaint does not even ask for any correction of this instrument. It is manifest therefore that whatever express rights relative to this reservoir the plaintiff has, must now be found in the terms of this written agreement.

And this brings us to the only remaining question—whether the court ought to have found upon the facts that the

plaintiff had acquired by prescription the right to fish and boat upon the lake.

Several independent answers might be made to the plaintiff's claim under this head. It surely can make no difference with the result whether the plaintiff's sole right is under the agreement or under a prescriptive right. Either title would be insufficient to lay the foundation for an injunction against the enforcement of an ordinance which is a valid exercise of the police power of the state. But there is a direct answer to the plaintiff's claim which we prefer to rest the case upon. Upon the facts found the plaintiff's use of the reservoir lacks one indispensable element of a prescriptive title—it was not adverse. The court has found that the plaintiff relied upon this agreement, which was an express license to do the acts relied upon to establish the adverse title. Under this license the plaintiff acted, and he has never repudiated it in any way ; and he cannot now by such use convert the license of a personal privilege limited to his life into an absolute title to last forever.

But in this connection the question will naturally be suggested whether the agreement was valid. The court finds that there was no vote of the borough authorizing its execution or delivery, and that there was no vote or act of the board of water commissioners acting as a board. But it was signed —" The Warden, Burgesses, and Freemen of the borough of New Britain: F. T. Stanley, G. M. Landers, Water Commissioners." And the act of 1857, which authorized the establishment of the reservoir and the taking of land and water rights for the purpose, directed the borough to elect three persons as water commissioners, and authorized such water commissioners to purchase and take conveyances for and in the name of the borough of all property necessary for the purposes of the act. This is sufficiently broad to include as a necessary incident the right to fix the terms and conditions of the purchase. If then, as claimed by the plaintiff, this license to boat and fish was to take the place in part of money compensation for the land conveyed, the borough, having

accepted the land, ought not now, it would seem, to be heard in repudiation of the agreement.

In confirming the judgment of the court that upon the record the plaintiff is not entitled to the redress sought, we do not intend to decide, or even to express any opinion upon, the claim made by the plaintiff, that the rights and privileges of which he has been deprived constituted a part of the payment agreed to be made for the price of his land, and that for the loss of these he is entitled to compensation.

There was no error in the judgment complained of.

In this opinion the other judges concurred.