(No. 33509.—

THE CITY OF WEST FRANKFORT, Appellant, *vs.* HENRY FULLOP *et al.,* d/b/a The Eastern Petroleum Company, Appellees.

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

F. P. Hanagan, of Benton, for appellant.

Pyle & McCallister, of Carmi, for appellees.

Mr. Chief Justice Hershey delivered the opinion of the court:

The plaintiff, City of West Frankfort, which operates a municipal water system supplied from Lake West Frankfort, owned by the city and located some eight miles east of the city limits, enacted an ordinance declaring a certain area around the lake a drainage area, reciting a prohibition of oil and gas well operations there as necessary to protect the public water supply, and prohibiting both drilling and operating of oil and gas wells in the area. The defendants, Henry and Paul Fullop, doing business as the Eastern Petroleum Company, have oil and gas holdings within the designated drainage area.

The city filed suit in the circuit court of Franklin County to enjoin the defendants from drilling or operating oil and gas wells within the area, alleging a threatened pollution of the water supply in violation of the ordinance. After a temporary injunction, a hearing was held; and at the close of the plaintiff's evidence, the trial court found that the ordinance was unconstitutional and that the plaintiff had failed to prove the allegations of the complaint. The court ordered the complaint dismissed, the temporary injunction dissolved, and costs to stand against the plaintiff. From this order, the plaintiff appeals. Pending appeal, application to continue the temporary injunction and for *supersedeas* was denied. The trial court certified that the validity of a municipal ordinance is involved and that the public interest requires direct appeal.

The issues raised by the pleadings and on this appeal may be summarized as follows:

First, did the city have statutory authority to enact the ordinance? In this regard, did any statutory authority exist, and if so, what is its nature and extent?

Second, is the ordinance, as an exercise of said authority, valid as against the constitutional provisions that "No person shall be deprived of * * * property, without due process of law" (Ill. Const., art. II, sec. 2,) and that "Private property shall not be taken or damaged for

public use without just compensation" (Art. II, sec. 13.)? This involves a question of whether the ordinance, both on its face and as applied to the facts here, is a reasonable exercise of the police power.

Third, did the trial court err in allowing a motion to dismiss the complaint for injunction? To answer this, it must be decided if injunctive relief was proper on the allegations of the complaint and the evidence adduced in support thereof by the plaintiff.

First, did the city have statutory authority to enact the ordinance? Under section 75-3 of the Revised Cities and Villages Act, the city had express statutory power "to prevent or punish any pollution or injury" to its public water supply "ten miles beyond its corporate limits." (Ill. Rev. Stat., 1953, chap. 24, par. 75-3.) By section 74-2 thereof, it had such express authority five miles beyond, or "so far as the waterworks may extend." That these jurisdictional grants by the legislature appear in eminent domain waterworks statutes does not limit the exercise of jurisdiction to cases in which the city is condemning; for there would be no need for such power as to property condemned and owned by the city. Regulatory jurisdiction is required only over property of others, and this is implicit in these statutory grants.

While cities do not have jurisdiction outside their boundaries "in the absence of * * * power conferred" (*Dean Milk Co.* v. *City of Elgin,* 405 Ill. 204), it is "competent for the legislature, of course, to confer such power" (McQuillin, Municipal Corporations, sec. 15.30), and when granted, it is effective extraterritorially. *Chicago Packing and Provision Co.* v. *City of Chicago,* 88 Ill. 221.

With express statutory authority to enact anti-pollution ordinances, effective outside the city limits in the area considered here, it is not necessary to consider the authority to prevent nuisances or to enact general police power ordinances. It is evident from the wording of the ordinance

that it was meant to be enacted pursuant to such express statutory grants of power. The ordinance first describes land (all of which is located within ten miles of the city's corporate limits and constitutes the watershed of the city lake) that is said to include streams or sources of water for the supply of the impounding reservoirs and waterworks system of the city. It then recites that in order to protect the water supply it is necessary to prohibit drilling of oil and gas wells in said area and that it is "deemed expedient and necessary to take immediate action to prohibit drilling and operations for oil and gas wells within the immediate drainage area of said water supply in order to prevent pollution of said above described water source." Accordingly, the ordinance prohibits the drilling, operating or causing to be operated of any oil or gas well in the area. And the evidence discloses by undisputed maps, that both of the defendants' well sites are less than eight miles from the city and within the designated drainage area.

Second, is the ordinance valid as against constitutional objections?

The police power resides in the State, is asserted by the legislature, and embraces all matters reasonably related to the public health and safety, (*People* v. *City of Chicago,* 413 Ill. 83,) including the power to protect a public water supply against pollution. (*Harvey Realty Co.* v. *Borough of Wallingford,* 111 Conn. 352; cf. *Freeport Water Co.* v. *City of Freeport,* 186 Ill. 179, affd. 180 U.S. 587.) It may be delegated to cities regarding public water matters, (*Spalding* v. *City of Granite City,* 415 Ill. 274,) and regarding oil well operations affecting the public interest. *Adkins* v. *City of West Frankfort,* 51 F. Supp. 532.

Instances of such city regulation protecting a public water supply have been held to include the prohibition of boating or fishing, (*Dunham* v. *City of New Britain,* 55 Conn. 378, 11 Atl. 354,) the prohibition of seaplane operations, (*City of Shreveport* v. *Conrad,* 212 La. 737, 33 So. 2d

503,) the driving out of trespassing cattle on watershed lands, (*Phillips* v. *City of Golden,* 91 Colo. 331, 14 P. 2d 1013,) and the addition of fluorides. *Krause* v. *City of Cleveland,* (Ohio. Comm. Pl.) 116 N.E. 2d 779.

Individual uses of property are subject to the public health and safety requirements of police power action, (*Trust Company of Chicago* v. *City of Chicago,* 408 Ill. 91,) including individual uses for oil operations. (*Adkins* v. *City of West Frankfort,* 51 F. Supp. 532.) While the latter case actually held void a bond requirement imposing absolute liability, the language regarding the police power is clear and unequivocal.

Since "in every case this power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the freedom" granted by the constitution, (*City of Blue Island* v. *Kozul,* 379 Ill. 511; *Village of South Holland* v. *Stein,* 373 Ill. 472; *Adkins* v. *City of West Frankfort,* 51 F. Supp. 532,) attempted regulation having no clear and present relation to the public safety, (*Ambassador East, Inc.* v. *City of Chicago,* 399 Ill. 359,) or imposed where the threat to the public health and safety is remote, (*Transcontinental Gas Pipe Line Corp.* v. *Borough of Milltown,* 93 Fed. Supp. 287,) may be voided.

But where substantial evidence on both sides is in conflict, the regulation will ordinarily be sustained, (*Transcontinental Gas Pipe Line Corp.* v. *Borough of Milltown,* 93 F. Supp. 287,) and it has often been stated that where there may be fair debate as to the need for the regulation, the legislative judgment exercised by the city council will be respected. Cf. *Adkins* v. *City of West Frankfort,* 51 F. Supp. 532.

There is no question but that a municipal water supply is vital to public health and safety; thus, an ordinance preventing and punishing the pollution of the supply could readily be upheld as a reasonable exercise of the delegated police power. But, as noted, this ordinance goes farther.

It undertakes to say categorically, or by legislative fiat, that any oil well operation, including even the drilling of an oil well within the watershed, constitutes a threatened injury to or pollution of the water supply. We must, therefore, determine whether the record here presented supports this categorical prohibition of even commencing to bore into the ground to find whether there is oil below the surface.

Viewed in general perspective, it appears from the evidence that the means adopted in the ordinance (the prohibition of oil and gas well drilling and operations within the lake drainage area) may be properly within the scope of the authority granted, (the prevention of pollution to the water supply,) and there may be a reasonable relationship between the two. For the evidence, summarized further, shows a definite causal relationship between oil well drilling and/or production and pollution or injury to a water supply, at least potentially. This arises from the apparent fact that in drilling for oil and gas, and in the production thereof, there is often a salt water discharge, which if permitted to flow into a water supply in sufficient quantities will pollute it.

The plaintiff's evidence tended to prove the following facts: The defendants' well sites, about 7 miles from the city and 1.5 and 1.7 miles respectively from the lake water level, were only 70 feet and 100 feet respectively from the main tributary of the lake's creek source, and above it at 3 to 5 per cent grades. (The defendants admit in their pleadings that they applied for a drilling permit and intend to drill at these sites.) While drilling oil wells is a limited hazard, operation is always a potential hazard, and there is salt water contamination in drilling operations. And while not all wells produce salt water, it is the normal discharge in the area. There is no satisfactory way to dispose of salt water from wells, and evaporation pits often do not work. Even from nonproducing wells in the area,

salt water runs out of the pits right into the lake. Photographs of pits in the area show breaks and run-off flows. Salt content of such run-off water is as high as 85,000 to 90,000 parts per million, far in excess of the 250 parts maximum for public safety. One gallon of salt water would pollute 600 gallons of fresh water; less than 200,000 gallons would contaminate the lake which at the time of the hearing had only a 100-day supply of water. Salt water from the two proposed locations would flow into the natural tributary of the city's water supply, and duplication of the described conditions would contaminate the city's water. Once such contamination has been caused, there is no practical way to purify the water.

On this evidence, the assertion in the *Adkins case* that "oil and gas and the methods used in obtaining them are unique" is well taken, and it is clear there is at least some substantial evidence that even the drilling of oil wells on the proposed locations would probably present a hazard to the nearby water supply.

If the defendants were to proceed with methods such as those shown by the evidence, the result could be a community catastrophe. Given this situation, abstract suggestions regarding the unreasonableness of the ordinance on its face, rather than in light of the evidence, are not well taken. See Bernard, "Avoidance of Constitutional Issues," 50 Mich. L. Rev. 261.

While we have distinct reservations about the draftsmanship in this ordinance (as in the *Adkins case*), while it may be that on a full hearing the defendants can show that the need for the regulation is too remote (as in the *Transcontinental case*), while it might be established that the ordinance prohibiting not only operations but even drilling as a council-proclaimed source of pollution sets up legislative recitals contrary to some scientific fact (as in *Hyman v. Dillon,* 79 Fla. 673, 84 So. 666,) and while the defendants might present evidence of intended physical,

chemical or engineering safeguards to prevent pollution, we are not prepared on this record to say that the prohibition imposed is an unreasonable exercise of the police power or deprives the defendants of due process of law.

Likewise, once the police power is established, the other constitutional claim has little merit. For the fact that the exercise of the police power precludes the most profitable use of property in private hands does not make the exercise invalid as such nor render it invalid as a "taking" of the primary use, and hence the essence of, the property. Cf. *Adkins* v. *City of West Frankfort,* 51 F. Supp. 532; *Chicago and Northwestern Railway Co.* v. *Commerce Com.* 326 Ill. 625.

Third, did the trial court err in allowing the motion to dismiss the complaint for injunction?

It is recognized that injunctive relief against oil well pollution of a water supply is proper. *Continental Oil Co.* v. *Grosbeck,* (Tex. Civ. App) 95 S.W. 2d 714; McQuillin, Municipal Corporations, sec. 49.57; cf. *City of Springfield* v. *North Fork Outlet Drainage District,* 249 Ill. App. 133.

The rule in equity on a motion to dismiss at the close of the plaintiff's evidence is the same as at law. If there is any substantial evidence tending to prove the plaintiff's allegations, the motion must be denied. (*Fewkes* v. *Borah,* 376 Ill. 596, 600; *Middleton* v. *Middleton,* 339 Ill. App. 448.) Here, while the defendants, so far as the record shows, had not even touched the ground in the drainage area, it is apparent that once they start drilling, pollution might follow. We do not consider that an equity court, faced with such an imminent possibility of even a limited hazard to the water supply of 16,000 people, ought to wait until the possible damage is done.

We say nothing as to what our view might be on a subsequent appeal. Compare, for example, the *Transcontinental case* where the pipe line company's motion for summary judgment on conflicting evidence was denied, but

subsequently, when all the evidence was heard, the ordinance was held to be an unreasonable burden on interstate commerce. All we say at this point is that the court, on the evidence presented, erred in holding the ordinance unconstitutional and in finding that the plaintiff had failed to prove its allegations. Therefore, it erred in dismissing the complaint for want of equity and dissolving the injunction.

Accordingly, the judgment of the circuit court is reversed and the cause remanded, with directions to overrule the defendants' motion to dismiss and, under section 64 of the Civil Practice Act, to hear any evidence presented by the defendants and any rebuttal evidence of the plaintiff, and to proceed in a manner not inconsistent with the views here expressed. Pending this final determination, it is directed that the temporary injunction be reinstated. Costs in this court will be against the appellees.

*Reversed and remanded, with directions.*