THE VILLAGE OF GLENCOE, Plaintiff-Appellant, *v.* THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellee.

(No. 60132;

First District (4th Division)—October 23, 1974.

G. Kent Yowell, of Northbrook, for appellant.

Allen S. Lavin, of Chicago (Charles W. Boyd, Phillip Rothenberg, Paul C. Sheils, and James B. Murray, of counsel), for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

In July of 1972 the Metropolitan Sanitary District of Greater Chicago (District) notified the Village of Glencoe (Village) that it was discharging wastes into the waters of the District in violation of its Sewage and Waste Control Ordinance. The parties conferred, but were unable to reach a successful conciliation. Shortly thereafter, a pollution control officer of the District took grab samples of the Village's discharge. On November 22, 1972, the District notified the Village that it was to appear before a hearing officer and show cause why such a discharge should not be discontinued. A hearing was held before a hearing officer, and

evidence was received including the results of samples and tests taken by both parties at a tap near the point of discharge. The hearing officer concluded that the Village was discharging pollutants in violation of the ordinance. Subsequently, the Village appeared before the Board of Trustees of the District. After a hearing before the Board, the Village was ordered to cease and desist from violating the ordinance. The Village filed an action in the circuit court seeking review under the Administrative Review Act. The trial court affirmed the order of the Board of Trustees, and the Village appeals.

The Village operates a water filtration plant which is located on the shoreline of Lake Michigan. The plant receives raw lake water and passes it through a succession of purification devices. In the ordinary course of cleaning the component parts of its plant, the Village backwashes into Lake Michigan the sludge accumulated in the bottom of its settling basins. This backwash is generally conducted biannually. It is estimated that the discharge amounts to 50 tons of solids and 2,000,000 gallons of water being returned to the Lake each year. Approximately one-half of the solid matter is in reality a concentrated return of particles filtered out of the raw lake water. The other one-half principally consists of alum which is added to the water during the purification process to precipitate out turbidity.

■■ The Village primarily contends that the District exceeded its statutory authority by enacting its Sewage and Waste Control Ordinance. As pointed out by the Village, article VII, section 8, of the Illinois Constitution of 1970 provides that "* * * special districts * * * which exercise limited governmental powers or powers in respect to limited governmental subjects shall have only powers granted by law." Thus, the District derives its powers exclusively by statute, and has only that authority which is expressly conferred upon it. (*People ex rel. Illinois Highway Transportation Co. v. Biggs*, 402 Ill. 401.) As stated in *Oliver v. Civil Service Commission*, 80 Ill.App.2d 329, 334, 224 N.E.2d 671, 674, "The law is clear * * * that regulatory agencies have no inherent powers. They are creatures of statute, vested only with those powers specifically conferred upon them by the legislature * * *."

The grant of authority to the District is found in section 4 *et seq.* of "An Act to create sanitary districts * * *" (Ill. Rev. Stat., ch. 42, par. 323 *et seq.*). Section 4 provides in material part that:

> "The board of trustees has full power to pass all necessary ordinances, orders, rules resolutions and regulations for the proper management and conduct of the business of the board of trustees and the corporation and for carrying into effect the object for which the sanitary district is formed. * * *"

Section 7aa of the same act provides that:

"The sanitary district has the power and authority to prevent the pollution of any waters from which a water supply may be obtained by any city, town or village within the district. * * *" (Ill. Rev. Stat., ch. 42, par. 326aa.)

Section 7bb of the same act provides that:

"The term 'Pollution' means such alteration of the physical, thermal, chemical, biological or radio-active properties of any waters of the State, or such discharge of any contaminant into any waters as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational; or other legitimate uses, or to livestock, wild animals, birds, fish, or other aquatic life.

* * *

(2) The sanitary district acting through the general superintendent shall study, investigate, and from time to time determine ways and means of removing from the waters within such sanitary district so far as practicable, all pollution, and to determine methods of abating pollution that is detrimental to the public health or to animals, fish or aquatic life, or detrimental to the practicable use of the waters for purposes of recreation, industry, or agriculture. * * *" Ill. Rev. Stat., ch. 42, par. 326bb.

In September of 1969 the District adopted its Sewage and Waste Control Ordinance pursuant to the grant of power in section 423. The last clause of Appendix A to the ordinance provides that "no sewage, industrial wastes or other wastes of any kind may be discharged into the waters of Lake Michigan." The District's position is that this backwash discharge violates Appendix A, and, therefore, must be discontinued.

There appears to be no conflict that the Village is in violation of Appendix A. This is expressly admitted by the Village. It also concedes the District's authority to prevent the discharge of pollutants into Lake Michigan. The Village argues, however, that there is no statute giving the District the express power or even implied authority to prohibit a nonpolluting discharge; and that Appendix A is an unlawful attempt by the District to ban a discharge without regard to its reasonableness, or without a consideration of the public health, safety or welfare. In short, the Village contends that the order to cease and desist must be contingent upon actual proof of pollution.

Throughout these proceedings, the Village has strenuously and sincerely maintained that its discharge does not pollute the waters of Lake Michigan. At the hearings before both the hearing officer and the Board

of Trustees, the Village offered to so prove. It is contended that the refusal of this evidence was improper, and that the limitation of the issue to whether or not the Village violated the ordinance was reversible error. The Village strongly believes that it would be improper to expend substantial public monies to install an alternative system of disposal until a showing is made that its discharge is harmful.

■■ We begin our discussion of the issues with two fundamental and undeniable principles; first, that the police power of the State may be employed to protect the public health (*City of West Frankfort v. Fullop,* 6 Ill.2d 609, 129 N.E.2d 682), and second, that the State of Illinois, as it may lawfully do, has delegated to the Metropolitan Sanitary District of Greater Chicago the police power to protect the public health with respect to certain waters. More specifically, the District is authorized by statute to prevent the pollution of Lake Michigan and other waters within its jurisdiction. Indeed, this is the undeniable objective of the statute.

■■ We are asked by the Village of Glencoe to hold that the District exceeded its statutory grant of authority by enacting Appendix A, for it is claimed that the Appendix bans a discharge without regard to whether it constitutes pollution. The basic premise underlying this request is unsound. We note that the District did not pass Appendix A on pure conjecture, nor without a keen awareness of its statutory duties. The Ordinance was adopted only after a thorough consideration by the Board of Trustees over a period of 1 year. During that time span three public hearings were held at which extensive evidence was received on the matter. At the conclusion of all evidence, the Board formed a calculated and informed opinion that Lake Michigan was at a critical stage, and that the discharge of any waste into the lake would seriously impair its suitability for the purposes enumerated in the statute. Therefore, the Board determined that the discharge into the lake of any waste, regardless of volume or chemical composition, per se pollutes the lake. Thus, we cannot say that Appendix A bans a discharge without regard to whether it constitutes a pollutant, since the District has determined that the discharge of any waste is per se a pollutant. Accordingly, it was proper at the hearing to limit the issue to whether the Village was in violation of the Ordinance, and it was not error to refuse the Village's offer of proof that its discharge did not pollute Lake Michigan.

■■ Wide latitude must be given to administrative agencies. Where their discretion is broad, an agency determination may not be overturned because a court may think it unwise or their policy inappropriate. (*James v. Cook County Department of Public Aid,* 126 Ill.App.2d 75, 261 N.E.

2d 420.) When construing a statute, the court's principle object is to ascertain and give effect to the intention of the legislature. (*Fowler v. Johnson City & Big Muddy Coal & Mining Co.*, 292 Ill. 440.) We note that in Illinois, the public concern with pollution has been elevated to the level of constitutional dignity. Article XI, section 1, of the Illinois Constitution of 1970 provides that, "The public policy of the State * * * is to provide and maintain a healthful environment for the benefit of this and future generations." Viewing the statute as a whole, we believe it is clear that the legislature intended to carry through this posture by granting extremely broad powers to the District. We believe it to be equally clear that it is within the District's statutory power to ban the discharge of any waste, when in its opinion such waste pollutes or is even likely to pollute the waters of the District.

■■■ A presumption of validity attaches where an ordinance is passed pursuant to a legislative grant of authority (*City of Decatur v. Chasteen*, 19 Ill.2d 204), and the courts will not interfere absent a showing that the agency's action was palpably arbitrary, unreasonable, or capricious. (*Richards v. Board of Education*, 21 Ill.2d 104.) We conclude that the Ordinance bears a rational relation to a legitimate public interest, and that it was enacted in furtherance of a legislative intent to prevent the pollution of precious water supplies. As stated by the League of Women Voters of Glencoe, amicus curiae, the problem is especially serious because the pollution of Lake Michigan is practically irreversible. Secretary of Interior Udall also noted that, "Delay means death to Lake Michigan." Finally, as stated in *Crowley v. Christensen*, 137 U.S. 86, 89:

> "* * * the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will."

The ordinance applies uniformly to all, and we find that the resulting public benefit greatly outweighs the individual hardship of the Village.

Finally, it is contended by the Village that the District improperly enlarged its statutory authority by redefining the term "industrial waste." The statute defines "industrial waste" as:

> "* * * solids, liquids, or gaseous wastes resulting from any industrial or manufacturing operation or process, or from the development of any natural resources." (Ill. Rev. Stat., ch. 42, par. 326bb.)

The ordinance defines "industrial waste" as:

"* * * all solid, liquid or gaseous waste resulting from any industrial, manufacturing, trade of business process or from the development, recovery or processing of natural resources."

It is admitted by the Village that its discharge constitutes an "industrial waste" under the Ordinance, since it is a waste resulting from the processing of a natural resource. But it is argued that it is not an "industrial waste" under the statute. Therefore, it is contended that the discharge is permissible. This argument lacks serious merit.

In addition to "industrial wastes" the statute grants the District the power to prevent "sewage wastes" and "other wastes." "Other wastes" is defined as follows:

"* * * decayed wood, sawdust, shavings, bark, lime, refuse, ashes, garbage, offal, oil, tar, chemicals *and all other substances except sewage and industrial waste.*" (Ill. Rev. Stat., ch. 42, par. 326 bb.) (Emphasis added.)

Given this full range of responsibility, we fail to see how the District has enlarged its statutory power. Even if the Village's discharge is not an "industrial waste" under the statute, clearly it is an "other waste" over which the District has authority to act.

For the reasons set forth, the judgment of the circuit court is affirmed.

Judgment affirmed.

ADESKO, P. J., and DIERINGER, J., concur.