THE CITY OF SPRINGFIELD, Plaintiff-Appellant, v. DONALD L. HASHMAN *et al.*, Defendants-Appellees.

Fourth District   No. 4—01—0002

Opinion filed July 29, 2002.

Karen L. Kendall, Timothy L. Bertschy (argued), and Craig L. Unrath, all of Heyl, Royster, Voelker & Allen, of Peoria, and Gary S. Schwab, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

John M. Myers (argued) and Erin E. Wisner, both of Rabin, Myers & Hanken, P.C., of Springfield, for appellees.

John P. Schmidt, State's Attorney, of Springfield (J. William Roberts and D. Bradley Blodgett, Special Assistant State's Attorneys, of counsel), for *amicus curiae*.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On September 13, 1999, plaintiff, the City of Springfield, Illinois (City), an Illinois municipal corporation, filed a complaint for declaratory judgment and injunctive relief against defendants, Donald L. Hashman, Henrietta M. Hashman, and the Village of Chatham, Illinois (Village of Chatham), an Illinois municipal corporation. After a bench trial, the trial court entered judgment in favor of defendants. This court reversed the trial court's judgment (*City of Springfield v. Hashman*, No. 4—01—0002 (January 17, 2002) (unpublished order under Supreme Court Rule 23)). On April 3, 2002, defendants, Donald L. Hashman and Henrietta M. Hashman, petitioned the supreme court for leave to appeal. Defendant, Village of Chatham, did not petition the supreme court for leave to appeal. Our supreme court denied defendants' petition for leave to appeal but, under its supervisory authority, directed this court to vacate our order and to reconsider our judgment "in light of section 95.501 [of Chapter 95] of the [1988 City of] Springfield Code of Ordinances, and to resolve the issue of plaintiff's entitlement to injunctive relief, if any, and the parameters thereof with appropriate consideration of [section 11—101 of the Code of Civil Procedure (Code) (735 ILCS 5/11—101 (West 1998))] and the trial court's findings of fact." Pursuant to supreme court supervisory order, we vacate our order entered on January 17, 2002. We reverse and remand with directions.

Donald L. Hashman and Henrietta M. Hashman (Hashmans) are the developers of certain real estate, consisting of 22.408 acres of land in unincorporated Sangamon County. The Hashmans began constructing roads and other improvements on the subject property for a residential development called Wildwood Estates. This development was designed for approximately 20 single-family homesites on building lots ranging from two-thirds of an acre to one acre in size, utilizing private sewage disposal systems on each of the lots.

The City operates a public water system that is supplied from Lake Springfield, a 4,300-acre man-made reservoir owned and operated by the City. Lake Springfield provides drinking water to 80% of the population of Sangamon County, including seven wholesale water customers, five villages and two water districts. The subject property is contiguous to the corporate limits of the City and is located within approximately 200 feet of Lake Springfield immediately adjacent to Sugar Creek marsh, which drains directly into Sugar Creek which, in turn, feeds Lake Springfield. Section 96.019 of chapter 96 of the 1988 City of Springfield Code of Ordinances prohibits any person within the Lake Springfield drainage area from constructing or using any cesspool

or other structure which is so situated that pollutants or oily liquid may reach and pollute or threaten to pollute the lake unless adequate treatment and disposal facilities are to be provided and are approved by the City.

The Springfield Comprehensive Plan 2010, Goals, Policies & Objectives, adopted July 2, 1991, includes the prohibition of new septic systems along the Lake Springfield shoreline and the phase-out of septic systems as sewers become available for the protection of Lake Springfield. The prior comprehensive plan, dated August 1982, states that since Lake Springfield is the city's source of drinking water, protection of the lake and its watershed is of the utmost importance. The 1982 plan states that "[t]he best way to protect Lake Springfield would be to allow no further development in areas which drain into the lake. Obviously, this is not practical. Alternative solutions include: controlling the types of development, eliminating the use of septic tanks and controlling runoff from any new development."

In 1986, 1988, and 1989, the Hashmans submitted their subdivision plans for development of the subject property to the City for review pursuant to the City's land subdivision ordinance. On July 14, 1986, the Hashmans were advised by the Springfield Sangamon County Regional Planning Commission (Planning Commission) that their property was not suitable for subdividing because the property drained directly into Sugar Creek, which in turn feeds into Lake Springfield. According to the Planning Commission, the soils are rated as having moderate to severe limitations for septic tank seepage fields and the probability of effluent drainage into Sugar Creek is great. On April 17, 1990, the Springfield city council denied the Hashmans' request for reconsideration of the Planning Commission's October 18, 1989, recommendation.

On October 25, 1991, the Hashmans, and others, filed a petition in the circuit court of Sangamon County to annex certain unincorporated territory, including the Wildwood Estates development, to the Village of Chatham pursuant to article 7, division 1, of the Illinois Municipal Code (Municipal Code) (Ill. Rev. Stat. 1991, ch. 24, pars. 7—1—1 through 7—1—48). After an evidentiary hearing, the trial court entered an order on May 14, 1992, denying annexation. The trial court determined that "the territory in question *** is simply not a natural and gradual extension of the Village [of Chatham] boundaries to areas which adjoin one another in a substantial physical sense." On appeal, this court affirmed the order dismissing the petition to annex, finding that "the nature of the territory sought to be annexed does not meet the requirements of section 7—1—1 of the [Municipal] Code." *In re Annexation of Certain Territory to the Village of Chatham, Illinois*, 245

Ill. App. 3d 786, 796, 614 N.E.2d 1278, 1285 (1993). On January 29, 1996, the Hashmans entered into an annexation agreement with the Village of Chatham pursuant to the Municipal Code.

On December 11, 1998, the Hashmans were advised by the Sangamon County Zoning Board that any home construction on the property would require a certificate of zoning compliance and that the current zoning classification for the property was "A," agricultural, requiring one-acre lots. On June 15, 1999, the Hashmans filed a petition with the Sangamon County Zoning Board of Appeals (Zoning Board of Appeals) requesting rezoning of the subject property from "A," agricultural district, to "R-1," single-family-residence district, which would allow lots of less than one acre in size. On July 15, 1999, a public hearing on the Hashmans' petition was held before the Zoning Board of Appeals, which recommended that the Sangamon County Board deny the rezoning:

"due to proximity to Lake Springfield and lack of public sewers, the smaller lot area under R-1 zoning would allow a higher density of private septic systems which would be potentially detrimental to the lake."

On September 14, 1999, the Sangamon County Board accepted the recommendation of the Zoning Board of Appeals and denied the Hashmans' petition to rezone the subject property. On September 15, 1999, the Village of Chatham adopted Ordinance No. 99—43, zoning the subject property R-1 single-family residence.

On September 13, 1999, the City filed a complaint for declaratory judgment and injunctive relief against the Hashmans and the Village of Chatham, and on October 21, 1999, it filed an amendment to the complaint. The matter proceeded to a bench trial. At the close of all the evidence, the trial court entered judgment in favor of defendants, finding:

"(a) Wildwood Estates is within the drainage area of Lake Springfield.

(b) Septic systems, without regular maintenance, may fail and release human waste into the environment.

(c) The City has approved the installation of private sewage systems within the drainage area of Lake Springfield for 'major' and 'minor' subdivisions, while at the same time denying approval of Wildwood Estates Subdivision.

(d) Plaintiff's evidence fails to satisfactorily persuade or prove that septic systems are polluting or will pollute Lake Springfield. The possibility that a septic system may fail, that human waste may be released into the environment, that said waste may enter Sugar Creek, and that said waste may enter Lake Springfield fails to sustain Plaintiff's burden of proof.

(e) Sangamon County has the power to regulate septic systems installed in Wildwood Estates.

(f) In order to extend the corporate limits of the Village [of Chatham] to the South and East, Wildwood Estates presents a necessary addition to the Village [of Chatham]. Therefore, the addition of said subdivision was a natural and gradual extension of the Village [of Chatham] boundaries."

This appeal followed.

■ The supreme court asks that we reconsider our judgment in light of section 95.501 of the 1988 City of Springfield Code of Ordinances. We have reviewed each of the briefs filed in this court by plaintiff, defendants, and *amicus curiae*. We do not find a reference to section 95.501. We do find, in defendants' petition for rehearing, filed February 5, 2002, the following:

"Section 96.019 of the City Code cannot be viewed in a vacuum. The City ordinances which govern septic systems, §§ 95.500 *et seq.* of the City Code, were also in evidence in this case (Pl. Ex. 24). Section 95.501 of the City Code plainly gives jurisdiction over sewage issues in Wildwood Estates Subdivision to the County."

We note a point not argued shall not be raised in a reply brief, in oral argument, or on petition for rehearing. 177 Ill. 2d R. 341(e)(7). Further, at trial, defense counsel stated in reference to section 95.501:

"[T]his ordinance clearly does not apply to the Hashman property. This ordinance applies to places that are within the corporate limits of the City and to marginal lands. Marginal lands are defined elsewhere in the ordinance book as lands which are immediately adjacent to Lake Springfield. The Hashman property is not within that definition.

So, this ordinance is not relevant to any issue in dispute."

Defendants cannot now present argument that is contrary to their position at trial.

Section 95.501, as amended, provides:

"This article shall apply within the corporate limits of the city and in order to protect the public water supply, shall apply to the marginal lands of Lake Springfield, *in a manner consistent with the provisions of Chapter 96 of this Code.* Properties which are included in the marginal lands of Lake Springfield, but are outside the corporate limits of the City of Springfield[,] shall be permitted and inspected by the Sangamon County Department of Public Health pursuant to the Illinois Private Sewage Disposal Licensing Act and Code of 1996 and the extra requirements of the 1988 Springfield Code of Ordinances, as amended." (Emphasis added.) City of Springfield Code of Ordinances § 95.501 (1988) (amended October 6, 1998).

Section 96.019 provides for "adequate treatment and disposal facilities" to be provided and approved by the City. City of Springfield Code of Ordinances § 96.019 (1988). Should the City approve a subdivision plan that utilizes private sewage disposal systems on marginal land outside the corporate limits of the City of Springfield, section 95.501 mandates that the Sangamon County Department of Public Health will *permit* and *inspect* those private sewage disposal systems. We note that not all properties that utilize private sewage disposal systems are the result of the subdivision of land or are properties subject to the land subdivision ordinance. Those private sewage disposal systems, if on marginal land outside the corporate limits of the City of Springfield, will also be permitted and inspected by the Sangamon County Department of Public Health.

■ In sum, although we do not find reference to section 95.501 in the briefs before this court, and defense counsel, at trial, opined that "this ordinance is not relevant to any issue in dispute," we have reconsidered our judgment in light of section 95.501 of the 1988 City of Springfield Code of Ordinances. Although section 95.501 mandates that the Sangamon County Department of Public Health permit and inspect those private sewage disposal systems on marginal land and land outside the corporate limits of the City of Springfield, section 95.501 does not provide for the Sangamon County Department of Public Health to approve a plan for the subdivision of land pursuant to the City's land subdivision ordinance. As noted above, should the City approve a subdivision plan that utilizes private sewage disposal systems on marginal land outside the corporate limits of the City of Springfield, section 95.501 mandates that the Sangamon County Department of Public Health will permit and inspect those private sewage disposal systems.

■ The supreme court has also asked that we "resolve the issue of [the City's] entitlement to injunctive relief, if any, and the parameters thereof with appropriate consideration of [section 11—101 of the Code (735 ILCS 5/11—101 (West 1998))] and the trial court's findings of fact." We will not disturb the trial court's findings unless they are against the manifest weight of the evidence. A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215, 647 N.E.2d 273, 277 (1995).

■ Section 11—101 provides that "[e]very order granting an injunction *** shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." 735 ILCS 5/11—101 (West 1998).

Section 11—125—2 of the Municipal Code provides:

"The jurisdiction of the city or village to prevent or punish any pollution or injury to the stream or source of water, or to waterworks, extends 20 miles beyond its corporate limits, or so far as the waterworks may extend." 65 ILCS 5/11—125—2 (West 1998).

Further, under section 11—125—2 of the Municipal Code, the City has an express statutory power "to prevent or punish any pollution or injury" to its public water supply "20 miles beyond its corporate limits." 65 ILCS 5/11—125—2 (West 1998).

■ In *City of West Frankfort v. Fullop*, 6 Ill. 2d 609, 613, 129 N.E.2d 682, 685 (1955), the supreme court stated:

"The police power resides in the State, is asserted by the legislature, and embraces all matters reasonably related to the public health and safety, [citation] including the power to protect a public water supply against pollution. [Citations.] It may be delegated to cities regarding public water matters ***.

Instances of such city regulation protecting a public water supply have been held to include the prohibition of boating or fishing, [citation] the prohibition of seaplane operations, [citation] the driving out of trespassing cattle on watershed lands, [citation] and the addition of fluorides."

This power to regulate must be so exercised as to not, in attaining a permissible end, unduly to infringe the freedom granted by the constitution. *Fullop*, 6 Ill. 2d at 614, 129 N.E.2d at 686. Attempted regulation having no clear and present relation to the public safety, or imposed where the threat to the public health and safety is remote, may be voided. *Fullop*, 6 Ill. 2d at 613, 129 N.E.2d at 685. "There is no question but that a municipal water supply is vital to public health and safety; thus, an ordinance preventing and punishing the pollution of the supply could readily be upheld as a reasonable exercise of the delegated police power." *Fullop*, 6 Ill. 2d at 614, 129 N.E.2d at 686.

The legislature has delegated to the City the police power to protect the public health with respect to certain waters. The City is authorized by statute to prevent the pollution of Lake Springfield and other waters within its jurisdiction.

Section 96.019 of chapter 96 of the 1988 City of Springfield Code of Ordinances, as amended, prohibits any person within the Lake Springfield drainage area from constructing or using any cesspool or other structure which is so situated that pollutants or oily liquid may reach and pollute or threaten to pollute the lake unless adequate treatment and disposal facilities are to be provided and are approved by the City. Section 96.019 states, in relevant part:

"No person shall within zone F, or in any other part of the drainage area, place, throw, discharge, or cause to be discharged, any

sewage, garbage, decayed or fermented fruit or vegetables, offal, dead body, manure, polluted, filthy, decaying, fermenting, putrescible, or oily matter or liquid or industrial waste, or any substance defined as a water pollutant by the regulations of the state pollution control board into, or so as to reach, any natural or artificial watercourse or open or covered sewer, ditch, tile, or drain flowing directly or indirectly, continuously or intermittently, into and so as to pollute or tend to pollute the reservoir or other waters from which the city obtains a water supply. No person shall construct in zone F or in any other part of the drainage area any open or covered sewer, ditch, tile, or drain, or make any change or connection so as to cause any pollution or polluted or oily water to flow into or reach more quickly, such reservoir or water supply of the city. No person shall within zone F or in any other part of the drainage area construct or cause to be constructed or use any toilet, water closet, urinal, sink, cesspool, privy, garage, slaughterhouse, or other structure, establishment, or place, which is so situated that polluted or oily liquid therefrom may continuously or intermittently so flow as to ultimately reach and pollute the waters of such reservoir or other waters from which the city obtains or may obtain a water supply unless there is constructed, maintained, and operated sewage treatment and disposal units and facilities for the treatment or disposal thereof, approved by the city, whereby such polluted or oily liquid is treated, or cause to be treated, so as not to pollute or tend to pollute or threaten pollution of the waters of the reservoir or water supply of the city." City of Springfield Code of Ordinances § 96.019 (1988).

Section 96.001 of chapter 96 defines "zone F" as follows:

"All land located within ten miles of the limits of the city-owned land and within the drainage area and includes all of zones A, B, C, D, and E, except that part of zone E which is outside the drainage area." City of Springfield Code of Ordinances § 96.001 (1988) (amended March 20, 1996).

The subject property is within the drainage area of Lake Springfield and zone F as defined above. So far as the record shows, the Hashmans have not, at any time before or after commencing construction, submitted any plans for the City's approval showing that the public water supply will be adequately protected. The record reflects that for more than 15 years, the Hashmans have been advised that their property is not suitable for a subdivision containing approximately 20 single-family homesites utilizing private sewage disposal systems. The property drains directly into Sugar Creek, which in turn feeds into Lake Springfield. The Springfield Planning Commission opined that the soils are rated as having moderate to severe limitations for septic

tank seepage fields and that the probability of effluent drainage into Sugar Creek is great. Henrietta Hashman testified that, presently in Wildwood Estates, there are five properties that have been developed with a home, all served by septic systems. Of those five properties, two have already had some problem with leakage in their septic systems.

The trial court found that "the City has approved the installation of private sewage systems within the drainage area of Lake Springfield for 'major' and 'minor' subdivisions, while at the same time denying approval of Wildwood Estates Subdivision." The record reflects that, since 1983, the City has approved, on *seven* occasions, the subdivision of various land in the area of Lake Springfield utilizing private sewage disposal systems. However, the most significant of the seven subdivisions contained *three* single-family home sites on five acres of land. The Hashmans' development is designed for approximately *20* single-family home sites on 22.408 acres of land.

Defendants argue that "in 1987 *** the City did allow a so-called 'major' subdivision with septic system." Defendants reference a subdivision of land approved in *1976* and containing 38 lots on 22 acres. After the development of 29 lots, the subdivision lay dormant for a period of time. A representative of the developer approached the land subdivision committee in 1986 and 1988 with regard to the remaining *nine* lots, arguing that "at one time, it had been approved by the City, work had been initiated, and lots had been sold." The land subdivision committee approved the final two plats of the subdivision, five lots on 2.91 acres in 1986, and four lots on eight acres in 1988.

David Kiliman, assistant director of the Planning Commission, testified that there have been two "major" subdivisions of land in the drainage area. In both cases, approval was withheld until the developers made arrangements to have public sewers installed. Further, according to Kiliman, many other developers have been denied approval of their subdivision plans because of their proposed reliance on septic systems.

The trial court found that "[p]laintiff's evidence fails to satisfactorily persuade or prove that septic systems are polluting or will pollute Lake Springfield." Section 11—125—2 of the Municipal Code does not require proof of "pollution or injury to the stream or source of water." In *Village of Glencoe v. Metropolitan Sanitary District of Greater Chicago*, 23 Ill. App. 3d 868, 870-74, 320 N.E.2d 524, 526-28 (1974), the Village of Glencoe (Village) argued that the Metropolitan Sanitary District of Greater Chicago (District) exceeded its statutory authority by enacting its Sewage and Waste Control Ordinance. The grant of authority to the District was found in "An Act to create sanitary districts ***." Ill. Rev. Stat. 1973, ch. 42, par. 323 *et seq.* That statute provided:

"The sanitary district has the power and authority to *prevent the pollution* of any waters from which a water supply may be obtained by any city, town or village within the district \*\*\*." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 42, par. 326aa.

The District adopted its sewage and waste control ordinance pursuant to the grant of power in the statute. The ordinance provided that no sewage, industrial wastes or other wastes of any kind may be discharged into the waters of Lake Michigan. The appellate court stated:

"There appears to be no conflict that the Village is in violation of [the ordinance]. This is expressly admitted by the Village. It also concedes the District's authority to prevent the discharge of pollutants into Lake Michigan. The Village argues, however, that there is no statute giving the District the express power or even implied authority to prohibit a nonpolluting discharge; and that [the ordinance] is an unlawful attempt by the District to ban a discharge without regard to its reasonableness, or without a consideration of the public health, safety or welfare. In short, the Village contends that *the order to cease and desist must be contingent upon actual proof of pollution.*" (Emphasis added.) *Village of Glencoe*, 23 Ill. App. 3d at 871, 320 N.E.2d at 527.

Throughout the proceedings, the Village had "strenuously and sincerely" maintained that its discharge did not pollute the waters of Lake Michigan. The appellate court stated:

"We are asked by the Village of Glencoe to hold that the District exceeded its statutory grant of authority by enacting [the ordinance], for it is claimed that the [ordinance] bans a discharge without regard to whether it constitutes pollution. The basic premise underlying this request is unsound." *Village of Glencoe*, 23 Ill. App. 3d at 872, 320 N.E.2d at 527.

The board had determined that the discharge into the lake of *any* waste, regardless of volume or chemical composition, polluted the lake. The appellate court found that the ordinance banned a discharge without regard to whether it constituted a pollutant since the District had determined that the discharge of any waste was, *per se*, a pollutant. The appellate court stated:

"When construing a statute, the court's principle object is to ascertain and give effect to the intention of the legislature. [Citation.] We note that in Illinois, the public concern with pollution has been elevated to the level of constitutional dignity. Article XI, section 1, of the Illinois Constitution of 1970 provides that, 'The public policy of the State \*\*\* is to provide and maintain a healthful environment for the benefit of this and future generations.' Viewing the statute as a whole, we believe it is clear that the legislature

intended to carry through this posture by granting *extremely broad powers* to the District. We believe it to be equally clear that it is within the District's statutory power to ban the discharge of any waste, when in its opinion such waste pollutes *or is even likely to pollute* the waters of the District." (Emphasis added.) *Village of Glencoe*, 23 Ill. App. 3d at 873, 320 N.E.2d at 527-28.

Contrary to the trial court's finding, the possibility that a septic system may fail, that said waste may enter Sugar Creek, and that said waste may enter Lake Springfield sustains plaintiff's burden.

The trial court found that "in order to extend the corporate limits of the Village [of Chatham] to the South and East, Wildwood Estates presents a necessary addition to the Village [of Chatham]. Therefore, the addition of said subdivision is a *natural and gradual extension* of the Village [of Chatham] boundaries." (Emphasis added.)

As stated, the trial court, after an evidentiary hearing, entered an order on May 14, 1992, denying the Hashmans and others' petition to annex certain territory, including the Wildwood Estates development. The trial court determined that *"the territory in question *** is simply not a natural and gradual extension of the Village [of Chatham] boundaries* to areas which adjoin one another in a substantial physical sense." (Emphasis added.) On appeal, this court affirmed the order dismissing the petition to annex, finding that "the nature of the territory sought to be annexed does not meet the requirements of section 7—1—1 of the [Municipal] Code." *In re Annexation of Certain Territory*, 245 Ill. App. 3d at 796, 614 N.E.2d at 1285.

Defendants argue that the evidence shows the Village of Chatham has extended its boundaries east and around the lake, one property at a time; and the Village of Chatham provides water and police services to the area. The Village of Chatham administrator testified that "instead of a mass annexation attempt that we are discussing here, [1993], we went back to a singular approach per landowner." While the record reflects that the Village of Chatham has entered into multiple annexation agreements with various property owners, we do not find that the Village of Chatham has extended, in a significant manner, its boundaries east and around the lake "in the wake of this Court's 1993 decision."

Section 11—15.1—2 of the Municipal Code (65 ILCS 5/11—15.1—2 (West 1998)) provides that any such annexation agreement may provide for the annexation of such territory to the municipality, "subject to the provisions of Article 7." This court has already determined, in *In re Annexation of Certain Territory*, 245 Ill. App. 3d at 796, 614 N.E.2d at 1285, that "the nature of the territory sought to be annexed does not meet the requirements of section 7—1—1 of the Code."

■ In 1986, 1988, and 1989, the Hashmans submitted their subdivision plans for development of the subject property to the City for review pursuant to the City's land subdivision ordinance. On each occasion, the Hashmans were advised by the Planning Commission that (1) their property was not suitable for subdividing because the property drained directly into Sugar Creek, which in turn feeds into Lake Springfield, (2) the soils were rated as having moderate to severe limitations for septic tank seepage fields, and (3) the probability of effluent drainage into Sugar Creek was great. The Springfield city council denied the Hashmans' requests for reconsideration of the Planning Commission's recommendations. The trial court is directed to enjoin the Hashmans from developing the subject property without receiving approval by the City of a subdivision plan.

For the reasons stated above, we reverse the trial court's judgment and remand with directions.

Reversed and remanded with directions.

KNECHT and STEIGMANN, JJ., concur.